**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

THOMAS HUDDLESTON, individually
and on behalf of all others similarly situated,

    Plaintiff,

v.

    Case No. 17-CV-549-GKF-FHM

JOHN CHRISTNER TRUCKING, LLC,

    Defendant.

**OPINION AND ORDER**

Before the court is the "Motion for Conditional Certification and to Facilitate Notice Under 29 U.S.C. § 216(b)" [Doc. No. 58] of the plaintiff, Thomas Huddleston.

**I.    Background**

Huddleston filed this lawsuit against John Christner Trucking, LLC (JCT), alleging, *inter alia*, that it violated the Fair Labor Standards Act (FLSA) by misclassifying its employees as independent contractors and requiring them to work without compensation. JCT is a for-hire trucking company headquartered in Sapulpa, Oklahoma, which hauls products throughout the contiguous United States. Huddleston worked for JCT as a truck driver from May, 2016, through August, 2016.

Huddleston asks the court to conditionally certify a collective action under the FLSA and to facilitate notice. Huddleston proposes the following definition for the collective:

> All current and former individuals who provide transportation services for John Christner Trucking, LLC ("JCT") within the United States at any time during the period beginning April 13, 2014, and continuing through the present, who entered into an Independent Contractor Operator Agreement with JCT, and entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC, who were classified as independent contractors.

[Doc. No. 73, p. 13].[1]  Four individuals have already elected to opt in by filing "Consent to Join Collective Action" forms:  Robert Lewis; Roy Bittner; Douglas D. Burnett II; and John Henshaw.  *See* [Doc. Nos. 44; 53; 70].

## II.   Standard

The Fair Labor Standards Act permits collective actions to be brought for and in behalf of similarly situated employees:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Granting conditional certification does not produce a class with an independent legal status or join additional parties.  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).  Rather, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court . . . ." *Id.*

District courts have discretion to determine whether to certify a § 216(b) collective.  The "overriding question" is whether the original plaintiffs and the opt-in plaintiffs are similarly situated.  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).  To answer this question, the Tenth Circuit has expressly authorized and endorsed a two-stage, *ad hoc* approach.  *See id.* at 1105.  During the first stage, plaintiffs face the relatively light burden of making "substantial allegations that the putative class members were together the victims of a

---

[1]   Huddleston proposed this language in his reply brief, in consideration of JCT's argument regarding the scope of the conditional collective.

2

single decision, policy, or plan."[2] *Thiessen*, 267 F.3d at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). "The court does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims." *Greenstein v. Meredith Corp.*, 948 F. Supp. 2d 1266, 1267 (D. Kan. 2013) (citing *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166–67 (D. Kan. 2006)). If the court determines a collective action should be certified for notice purposes, potential collective members are given notice and the opportunity to opt in. The action then proceeds as a representative action throughout discovery. *See Kaiser v. At the Beach, Inc.*, No. 08-CV-586-TCK-FHM, 2010 WL 5114729, at *3 (N.D. Okla. Dec. 9, 2010) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). The second stage occurs at the end of discovery, typically prompted by a motion to decertify. *Thiessen*, 267 F.3d at 1102–03. At that time, the court "makes a second, stricter similarly-situated determination considering '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the [FLSA] before instituting suit.'" *In re Chipotle Mexican Grill*, Inc., No. 17-1028, 2017 WL 4054144, at *1 (10th Cir. 2017) (citing *Thiessen*, 267 F.3d at 1103).

### III. Conditional Certification

This case is at the first stage and Huddleston bears the burden of making substantial allegations that the potential collective members were together the victims of a single decision, policy, or plan by JCT. In support Huddleston has submitted: (1) signed declarations by himself, Lewis, Bittner, and Burnett; (2) deposition excerpts from JCT's corporate

---

[2] This standard is "lenient and typically results in certification." *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1261 (D. Kan. 2015); *see also* Newberg on Class Actions § 23:38 (5th ed.) (noting the "use of the word 'substantial' should not be over-read . . . given the modest showing generally required of the plaintiff at this initial stage").

representative, Shannon Crowley; (3) a copy of JCT's operating and lease agreements; (4) a various orientation materials; and (5) compensation records.

Together, Huddleston, Lewis, Bittner, and Burnett allege the following. *See* [Doc. Nos 58-1; 58-2; 58-3; 58-4]. Each worked for JCT as a truck driver for a period of months or years. JCT misclassified them as independent contractors. Under the terms of their operating and lease agreements, JCT exercised complete control over their trucks and work-related activities. JCT accomplished this, in part, by requiring them to lease their trucks and purchase equipment from JCT, and by mandating their assignments, schedules, and routes. If they or JCT terminated their operating agreements, JCT had the option to terminate their lease agreements without notice and take immediate possession of their trucks. JCT required them to attend a mandatory and uncompensated orientation in Sapulpa, Oklahoma, which lasted two to three days. Once on the road, they routinely worked 10–14 hours per day and 70–98 hours per week. JCT compensated them based on three factors: (1) a flat rate per mile; (2) reimbursements for certain categories of expenses; and (3) deductions for, *inter alia*, lease payments, various insurance premiums, Qualcomm communications systems, licenses, maintenance and repair, cleaning services, fuel costs, freight charges, physical examinations, and drug screenings. Under this scheme, their effective hourly wage was often less than $7.25, the federal minimum wage. In fact, it was not uncommon for them to work 70–100 hours in a week but receive less than $500.00 from JCT. It was also not uncommon for them to receive negative paychecks. The conditions described above were consistent throughout their time with, JCT, and they observed their co-workers working under similar conditions.

JCT raises two arguments in response. *First*, JCT argues the court should apply a stricter standard to Huddleston's motion for conditional certification because he has had approximately

four months of discovery. [Doc. No. 68, pp. 14–15]. Some district courts have held that the "rationale for applying a lenient standard 'disappears . . . once plaintiffs have had an opportunity to conduct discovery.'" *Valcho v. Dallas Cty. Hosp. Dist.*, 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008); *see* Newberg on Class Actions § 23:38 ("The evidentiary standard may vary depending on whether plaintiffs have had time to conduct discovery.") (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823–28 (N.D. Ohio 2011) and *Valcho*, 574 F. Supp. 2d at 622). However, the Tenth Circuit has not authorized the use of a heightened standard while discovery is still ongoing, and district courts in the Tenth Circuit have generally resisted doing so on the grounds that it would be less clear and deprive plaintiffs of an opportunity to conduct full discovery. *See, e.g., Shockey v. Huhtamaki*, 730 F. Supp. 2d 1298, 1305 (D. Kan. 2010) (declining to collapse the *ad hoc* approach's two steps into a single step); *Lewis v. GEO Group, Inc.*, No. CIV-08-881-M, 2009 WL 3763821, *3 (W.D. Okla. Nov. 9, 2009) (rejecting defendant's argument that the court should hold plaintiffs to a higher evidentiary burden given the parties had engaged in 10 months of discovery); *Sanchez v. Simply Right, Inc.*, Case No. 15-CV-00974-RM-MEH, 2017 WL 2230079, at *2–3 (D. Colo. May 22, 2017) (declining to apply a heightened standard of similarly situated); *but see Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1080–81 (D. Kan. 1998) (holding the case was "beyond the 'notice stage'" where thirty individuals had already opted in and the parties had engaged in three months of discovery). Here, discovery on class certification is ongoing, and the court will not depart from the relative clarity of the *ad hoc* approach by applying some intermediate standard.

*Second*, JCT argues Huddleston has not shown a uniform policy of paying drivers less than the federal minimum wage, because the compensation, deductions, and number of hours worked varies driver-by-driver and week-by-week. [Doc. No. 68, pp. 15–23]. In the same vein,

5

JCT also argues that whether any particular driver was an employee rather than an independent contractor will require an individual factual analysis under the economic realities test. [Doc. No. 68, pp. 23–29]. However, this type of argument is premature; courts should only consider the "disparate factual and employment settings of the individual plaintiffs" at the second stage of the *ad hoc* approach. *Thiessen*, 267 F.3d at 1103; *see Geer v. Challenge Fin. Inv'rs Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *4 (D. Kan. Oct. 17, 2005) ("Courts in the Tenth Circuit . . . refus[e] to consider individual factual issues regarding exemptions at the notice stage."). Otherwise "no independent contractor misclassification case could be certified under the FLSA." *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 422 (W.D. Okla. 2017) (quoting *Carter v. XPO Last Mile, Inc.*, Case No. 16-CV-01231-WHO, 2016 WL 5680464, at *5 (N.D. Cal. Oct. 3, 2016)).

Based on the allegations and evidence submitted to the court, the court concludes Huddleston has made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. However, the court must modify Huddleston's proposed definition for the conditional collective as it relates to the limitations period. As noted above, Huddleston proposes a conditional collective consisting of "[a]ll current and former individuals who provide transportation services for John Christner Trucking, LLC ("JCT") within the United States *at any time during the period beginning April 13, 2014, and continuing through the present . . . .*" [Doc. No. 73, p. 13] (emphasis added). The filing of a complaint is not relevant to the limitations period for opt-in FLSA plaintiffs. Rather, an action commences for an opt-in plaintiff on the date he or she files "written consent to become a party plaintiff . . . ." 29 U.S.C. § 256. "Other district courts in this circuit have reasoned that, because opt-in plaintiffs cannot join a collective action prior to the class being

6

conditionally certified and notice being provided, the three year [FLSA limitations] period should end with the date of conditional certification." *Sharp v. CGG Land (U.S.) Inc.*, No. 14-CV-0614-CVE-TLW, 2015 WL 222486, at *6 (N.D. Okla. Jan. 14, 2015) (citing cases). Accordingly, the court will replace the phrase "at any time during the period beginning April 13, 2014, and continuing through the present" with "at any time during the period beginning May 1, 2015, and ending May 1, 2018" in the definition of the collective.[3]

### IV.    Notice

Huddleston attached to his motion a proposed notice and an opt-in consent form, which he requests the court approve for distribution to potential class members. *See* [Doc. Nos. 58-19; 58-20]. JCT objects to allowing potential collective members 120 days to file their consents with the court, arguing they should only be given 60 days. District courts typically give between 45–120 days, depending on the circumstances of the case. *See Sharp*, 2015 WL 222486, at *6. Here, the court concludes a 90-day response period is appropriate.

JCT also objects to the form of Huddleston's proposed notice and opt-in consent form. Specifically, JCT argues the court should excise a reference to "statutory penalties" and remove one-sided language from the proposed notice, and excise the "**IMPORTANT NOTE**" regarding the limitations period from the opt-in consent form. JCT requests leave to meet and confer with Huddleston to develop an agreed-upon notice. "When the parties dispute the form of the notice, courts have often required the parties to attempt to create a compromise notice, rather than simply ruling on the proposed notice." *Sharp*, 2015 WL 222486, at *6. Accordingly, the court orders the parties to meet and confer to develop an agreed notice and opt-in consent form.

---

[3]    FLSA claims have a two-year statute of limitations, except that a cause of action arising from a willful violation has a three-year statute of limitations. 29 U.S.C. § 255(a). "Courts generally use the three year limitations period in first stage conditional certification, despite the requirement of a willful violation, because the question of willfulness speaks to the merits of the case." *Sharp*, 2015 WL 222486, at *5.

7

In addition, Huddleston asks the court to order JCT to produce, within fourteen days of the entry of this order, "a computer-readable database that includes the names of all proposed Collective members, along with their last known mailing addresses, email addresses, telephone numbers, and social security numbers." [Doc. No. 30]. As other courts have concluded in this context, "the putative class members' privacy interests outweigh [Huddleston's] need for their social security numbers . . . at this point." *Koehler*, 93 F. Supp. 3d at 1266. If Huddleston finds that he cannot locate certain potential class members using the other information requested, he may file a motion detailing the need for additional information at that time. *See id.*

## V.     Conclusion

WHEREFORE, Huddleston's "Motion for Conditional Certification and to Facilitate Notice Under 29 U.S.C. § 216(b)" [Doc. No. 58] is granted in part and denied in part. The motion is denied as to Huddleston's request that JCT produce the social security numbers of potential class members. The proposed definition of the collective of potential plaintiffs is modified as described above to reflect the statute of limitations for opt-in plaintiffs, as provided in 29 U.S.C. §§ 255, 256. The motion is otherwise granted.

FURTHERMORE, Huddleston's claim is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b). The class of potential plaintiffs in this collective shall be limited to: All current and former individuals who provided transportation services for John Christner Trucking, LLC ("JCT") within the United States at any time during the period beginning May 1, 2015, and ending May 1, 2018, who entered into an Independent Contractor Operator Agreement with JCT, and entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC, who were classified as independent contractors.

FURTHERMORE, JCT shall produce to Huddleston's counsel, no later than May 31, 2018, a computer-readable database that includes the names of all proposed Collective members, along with their last known mailing addresses, email addresses, and telephone numbers.

FURTHERMORE, the parties shall meet, confer, and, no later than May 8, 2018, submit to the court an agreed-upon notice. The notice will conform to those requirements outlined in this opinion and order. If the parties are unable to agree, Huddleston will submit, no later than May 15, 2018, a proposed notice and a brief in support of no more than five pages. JCT will respond no later than May 22, 2018, with a proposed notice and a brief of no more than five pages.

IT IS SO ORDERED this 1st day of May, 2018.

*Gregory K. Frizzell*
GREGORY K. FRIZZELL, CHIEF JUDGE