## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

THOMAS HUDDLESTON, individually
and on behalf of all others similarly situated,

        Plaintiff,

v.

JOHN CHRISTNER TRUCKING, LLC,

        Defendant.

Case No. 17-CV-549-GKF-FHM

### OPINION AND ORDER

Before the court is the Motion for Judgment on the Pleadings [Doc. 74] of the defendant,

John Christner Trucking, LLC ("JCT").  JCT argues that federal law preempts all of plaintiff's

claims under California law and that certain claims suffer various deficiencies.  For the reasons set

forth below, the motion is granted in part and denied in part.

### I.  Background

The named plaintiff, Thomas Huddleston, commenced this lawsuit against JCT in the

United States District Court for the Eastern District of California.  According to the allegations in

Huddleston's complaint, JCT is a trucking company that hauls products throughout the contiguous

United States.   Huddleston alleges that JCT misclassified him and other truck drivers as

independent contractors when they were in fact employees of JCT and therefore entitled to the

protections of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and the California

Labor Code.

The complaint asserts nineteen causes of action: (1) failure to pay wages and minimum

wage in violation of the FLSA; (2) failure to pay minimum wage in violation of Cal. Lab. Code

§§ 200, 1182.11, 1182.12, 1194, 1197, 1197.1, and 1198; (3) failure to pay for all hours worked in

violation of Cal. Lab. Code §§ 201, 202, 204, and 221–23; (4) failure to authorize and permit

and/or make available meal and rest periods in violation of Cal. Lab. Code §§ 203, 223, 226.7, 512, and 1198; (5) failure to reimburse for necessary business expenditures in violation of Cal. Lab. Code § 2802; (6) failure to maintain proper payroll records in violation of Cal. Lab. Code § 1174; (7) failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226; (8) coerced purchases in violation of Cal. Lab. Code § 450; (9) willful misclassification in violation of Cal. Lab. Code § 226.8; (10) waiting time penalties pursuant to Cal. Lab. Code §§ 201–03; (11) unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (12) unlawful sale of business opportunities in violation of 71 O.S. §§ 806, 808, 819, 824; (13) deceptive and unfair trade practices in violation of the Oklahoma Consumer Protection Act, 15 O.S. §§ 752, *et seq.*; (14) deceptive trade practices in violation of the Oklahoma Deceptive Trade Practices Act, 78 O.S. §§ 52, *et seq.*; (15) constructive fraud and negligent misrepresentation; (16) unjust enrichment; (17) additional unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (18) statutory penalties pursuant to Cal. Lab. Code § 2699(a); and (19) statutory penalties pursuant to Cal. Lab. Code § 2699(f). Huddleston seeks to maintain his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) and his California state law claims as a class action pursuant to Federal Rule of Civil Procedure 23.

After JCT moved to dismiss based on lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the Northern District of Oklahoma, the court in the Eastern District of California transferred the case to this district. [Doc. 15]. Thereafter, JCT filed the instant motion for judgment on the pleadings. Huddleston filed a response opposing the motion [Doc. 78], and JCT filed a reply [Doc. 83]. Huddleston recently filed a notice of supplemental authority [Doc. 129], and JCT filed a response [Doc. 131].

## II.  Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings.  Courts reviewing such motions "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).  The motion "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.*

A defendant's motion for judgment on the pleadings under Rule 12(c) is subject to the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).  In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff has stated a claim upon which relief can be granted.  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556.

## III.  Discussion

### A.  Fourteenth and Sixteenth Causes of Action

JCT moves to dismiss Huddleston's fourteenth cause of action, which alleges violations of the Oklahoma Deceptive Trade Practices Act, 78 O.S. §§ 52, *et seq.* ("DTPA"), and sixteenth cause of action, which asserts a claim for unjust enrichment.  In his response, Huddleston concedes that there is no private right of action under the DTPA and that judgment is appropriate on his unjust enrichment claim.  [Doc. 78, p. 10 n.7].  Therefore, JCT is entitled to judgment on the pleadings with respect to Huddleston's fourteenth and sixteenth causes of action.

**B.  Eighth and Ninth Causes of Action**

JCT also moves to dismiss Huddleston's eighth cause of action, which alleges violations of Cal. Lab. Code § 450, and the ninth cause of action, which alleges violations of Cal. Lab. Code § 226.8.  In his response, Huddleston concedes that there is no "independent private right of action" under Cal. Lab. Code §§ 226.8 and 450.  [Doc. 78, p. 10 n.7].  Huddleston contends these claims "were primarily intended as predicate violations" for his claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"), and California's Private Attorney General Act, Cal. Lab. Code §§ 2699 *et seq.* ("PAGA").  [Doc. 78, p. 10 n.7].

Because there is no private right of action under sections 226.8 and 450, JCT is entitled to judgment on the pleadings with respect to Huddleston's eighth and ninth causes of action.  This ruling does not affect Huddleston's ability to assert UCL and PAGA claims based on alleged violations of sections 226.8 and 450.  *Cf. Nguyen v. Wells Fargo Bank*, No. 15-CV-05239-JCS, 2016 WL 5390245, at *16 (N.D. Cal. Sept. 26, 2016) (dismissing claim under Cal. Lab. Code § 204 because there is no private right of action under that section, but allowing plaintiff to maintain derivative UCL and PAGA claims based on alleged violation of § 204).

**C.  FAAAA Preemption and Huddleston's Claims under California Law**

JCT argues that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501, preempts all of Huddleston's claims under California state law, including Huddleston's second through seventh, eleventh, seventeenth, eighteenth, and nineteenth causes of action.

**1.  General Preemption Principles**

Pursuant to the Supremacy Clause of the United States Constitution, federal law preempts contrary state enactments.  *Boyz Sanitation Serv., Inc. v. City of Rawlins, Wyoming*, 889 F.3d 1189, 1198 (10th Cir. 2018).  The purpose of Congress is "the ultimate touchstone" in every preemption

case. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

Preemption can be express or implied. *Boyz Sanitation*, 889 F.3d at 1198. When a statute contains an express preemption clause, as is the case with the FAAAA, courts "use ordinary principles of statutory interpretation to evaluate whether the state law falls within the scope of the federal provision precluding state action." *Id.* Courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *EagleMed LLC v. Cox*, 868 F.3d 893, 903 (10th Cir. 2017) (citing *Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016)). When the statute's language is plain, the court's inquiry into preemption "both begins and ends with the language of the statute itself." *EagleMed*, 868 F.3d at 903 (citing *Puerto Rico*, 136 S. Ct. at 1946).

Preemption is an affirmative defense that the defendant has the burden to prove. *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015). A district court may grant judgment as a matter of law on the basis of an affirmative defense like preemption "when the law compels that result." *Id.* Sometimes, however, a "dispute of material fact will preclude a court from being able to render judgment as a matter of law on an affirmative defense like preemption." *Id.* at 1342.

## 2. History of the FAAAA

The FAAAA's history helps explain its purpose and preemptive scope. In 1978, Congress enacted the Airline Deregulation Act ("ADA"), 92 Stat. 1705, which "sought to promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014) (quoting 49 U.S.C. §§ 40101(a)(6), (12)(A)). Congress included a preemption provision, now codified at 49 U.S.C. § 41713(b)(1), in order to "ensure that the States

would not undo federal deregulation with regulation of their own." *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)).

Two years later, Congress passed the Motor Carrier Act of 1980, 94 Stat. 793, which extended federal deregulation to the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013). Fourteen years later, in 1994, Congress determined that state regulation of intrastate transportation of property had "imposed an unreasonable burden on interstate commerce" and "impeded the free flow of trade, traffic, and transportation of interstate commerce." Pub. L. 103–305, § 601(a)(1), 108 Stat 1569. Congress concluded that "certain aspects" of the state regulatory process should be preempted. *Id.* at § 601(a)(2). It therefore enacted the FAAAA, which borrows language from the ADA's preemption clause and expressly preempts certain state regulation of the trucking industry. *Id.* at § 601(c).

The FAAAA generally prohibits the states from enacting or enforcing any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The statute exempts certain measures from its preemptive scope, including state laws regulating motor vehicle safety, size, and weight; motor carrier insurance; and the intrastate transportation of household goods. 49 U.S.C. § 14501(c)(2)(A)–(B).

### 3. Relevant California Law

JCT does not identify a specific statutory provision or common-law rule that it contends is preempted by the FAAAA. Rather, JCT argues more broadly that the FAAAA "preempts Huddleston's use of state law to alter the terms on which he agreed to transport property." [Doc. 75, p. 6]. JCT seems to take particular issue with California's worker classification standards. [Doc. 75, pp. 8–9]. Several of Huddleston's claims require a finding of misclassification under California law. In support of its preemption argument, JCT asserts "[e]ach

of the facts on which [Huddleston] relies to establish that he was misclassified relates to the manner in which he transported property for JCT."  [Doc. 75, p. 12].

### i.  The *Borello* Standard

In *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399 (1989), the California Supreme Court established a standard for determining whether a worker is an employee or an independent contractor.  Under the *Borello* standard, courts consider the alleged employer's "right to control the manner and means of accomplishing the result desired," as well as several "secondary" factors.  *Id.* at 404.  The factors cannot be applied mechanically, and their weight depends on the circumstances.  *Id.*  The Ninth Circuit has "applied the *Borello* standard when assessing misclassification claims in the motor carriage industry."  *California Trucking Ass'n v. Su*, 903 F.3d 953, 959 (9th Cir. 2018).

### ii.  The "ABC Test" under *Dynamex*

Some of Huddleston's claims are based in part on alleged violations of Wage Order 9-2001 promulgated by California's Industrial Welfare Commission.  [Doc. 1 ¶¶ 8, 78, 96, 110, 113, 119, 121].  In California, wage orders are "constitutionally-authorized, quasi-legislative regulations that have the force of law."  *Dynamex Operations W. v. Superior Court*, 416 P.3d 1, 5 n.3 (2018).  In particular, Wage Order 9-2001 regulates working conditions for "employees" in the transportation industry.  *See* Cal. Code Regs., tit. 8, § 11090.  On April 30, 2018, two weeks *after* JCT moved for judgment on the pleadings in this case, the California Supreme Court decided *Dynamex*, which addressed the classification of workers for purposes of California wage orders.  416 P.3d at 4–7, 25–42.

Eschewing the multifactor *Borello* standard, *Dynamex* adopted a three-prong "ABC" test to decide whether a worker is a covered employee rather than an independent contractor for

purposes of California's wage orders. *Id.* at 35. Under the ABC test, a worker is presumed to be

an employee, unless the hiring entity establishes *each* of the following:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Id.*

Recent decisions applying *Dynamex* have concluded that the ABC test applies only to

wage-order claims and not claims predicated solely on California's Labor Code. *See, e.g.*, *Garcia*

*v. Border Transportation Grp., LLC*, 28 Cal. App. 5th 558 (Cal. Ct. App. 2018) (applying *Borello*

standard to non-wage-order claims); *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA,

2018 WL 5809428, at *3 (N.D. Cal. Nov. 6, 2018) ("The ABC test applies only to claims arising

under Industrial Welfare Commission Wage Orders.").

### 4. Supreme Court and Tenth Circuit Interpretations of the FAAAA

This court's reading of the FAAAA's preemption clause is guided by Supreme Court and

Tenth Circuit precedent. The FAAAA's preemption clause mirrors the ADA's preemption clause,

although it adds the qualifying phrase "with respect to the transportation of property." *Compare*

49 U.S.C. § 14501(c)(1), *with* 49 U.S.C. § 41713(b)(1). Courts therefore consult ADA preemption

cases when interpreting parallel language in the FAAAA's preemption clause. *See, e.g.*, *Rowe v.*

*New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008).

The Supreme Court has interpreted the "related to" language in the FAAAA and ADA on

several occasions. The Supreme Court has held that the phrase "related to" embraces state laws

"having a connection with or reference to" a carrier's rates, routes, or services, "whether directly

or indirectly." *Dan's City*, 569 U.S. at 260 (quoting *Rowe*, 552 U.S. at 370). "[P]re-emption

occurs at least where state laws have a 'significant impact' related to Congress' deregulatory and pre-emption-related objectives." *Rowe*, 552 U.S. at 371 (quoting *Morales*, 504 U.S. at 390).

However, the Supreme Court has cautioned that "the breadth of the words 'related to' does not mean the sky is the limit." *Dan's City*, 569 U.S. at 260. When enacting the FAAAA, Congress's target was "a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree) the services that motor carriers will provide." *Id.* at 263 (quoting *Rowe*, 552 U.S. at 372). Accordingly, the FAAAA "does not preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" *Id.* at 261 (quoting *Rowe*, 552 U.S. at 371). Additionally, "it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Id.*

Recently, in *Boyz Sanitation*, the Tenth Circuit considered whether the FAAAA preempted a city's garbage ordinance. 889 F.3d at 1199. The court concluded that, even if garbage collection fell within the preemptive scope of the FAAAA, "the ordinance's effect on prices, routes, and services would be too insignificant to warrant preemption." *Id.* The Tenth Circuit explained, "[T]he FAAAA doesn't preempt state laws that have too insignificant an effect on motor carriers' prices, routes, or services." *Id.* at 1200 (citing *Dan's City*, 569 U.S. at 261).

### 5. Interpretations of the FAAAA in Other Circuits

The Supreme Court and Tenth Circuit Court of Appeals have not directly addressed the application of the FAAAA to state employment laws such as those at issue here. Therefore, this court has considered the decisions of other courts for their persuasive value. Several courts of appeal have grappled with whether various state employment laws are "related to" a price, route, or service or are too "tenuous, remote, or peripheral" to fall within the ambit of FAAAA preemption. *See, e.g.*, *California Trucking*, 903 F.3d at 960; *Lupian v. Joseph Cory Holdings LLC*,

905 F.3d 127, 136 (3d Cir. 2018); *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 (7th Cir. 2016);

*Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 435 (1st Cir. 2016).

### i. Ninth Circuit

Recently, in *California Trucking*, the Court of Appeals for the Ninth Circuit held that

California's *Borello* standard is not "related to" prices, routes, or services, and therefore is not

preempted by the FAAAA.  903 F.3d at 957.  In that case, the California Trucking Association

("CTA") argued that the FAAAA preempts the *Borello* standard because the California Labor

Commission's use of the standard "can replace freely-bargained, efficiency-driven contract terms

with California's policy judgment about what those terms ought to be."  *Id.* at 961.

CTA relied on two Supreme Court decisions holding that the ADA preempted state laws

that interfered with a carrier's contractual relationship with its customers: *Ginsberg*, 134 S.Ct. at

1428–33, and *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 226–34 (1995).  The Ninth Circuit

distinguished *Ginsberg* and *Wolens* on the ground that they involved interference with customer

contracts at the point of sale.  *California Trucking*, 903 F.3d at 962.  The Ninth Circuit reasoned:

> Even if *Wolens* and *Ginsberg* draw a line between the permissible
> enforcement of contractual terms and the preempted enforcement of
> normative policies, that line does not control when the contractual
> relationship is between a carrier and its workforce, and the impact is
> on the protections afforded to that workforce.

*Id.*

The Ninth Circuit discussed the *Borello* standard's impact on workforce arrangements,

observing that "the *Borello* standard does not, by its terms, compel a carrier to use an employee or

an independent contractor."  *Id.* at 964.  The court held:

> [T]he mere fact that a motor carrier must take into account a state
> regulation when planning services is not sufficient to require
> FAAAA preemption, so long as the law does not have an
> impermissible effect, such as binding motor carriers to specific
> services, making the continued provision of particular services

10

> essential to compliance with the law, or interfering at the point that
> a carrier provides services to its customers.

*Id.* at 965 (quoting *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 649 (9th Cir. 2014)).  The Ninth

Circuit panel in *California Trucking* expressly avoided addressing whether the FAAAA preempts

the "ABC" test under *Dynamex.*  *Id.* at 959 n.4.

The Ninth Circuit also considered the scope of the FAAAA's preemption clause in *Dilts.*

769 F.3d at 637. The truck drivers in that case asserted claims under California's meal-and-rest-

break laws against their employer.  The court held the FAAAA did not preempt the laws, reasoning

that they were not sufficiently "related to" motor carrier prices, routes, or services.  *Id.* at 650.

### ii.  Seventh Circuit

In *BeavEx*, the Court of Appeals for the Seventh Circuit concluded, on a summary

judgment record, that the FAAAA did not preempt the Illinois Wage Payment and Collection Act

("IWPCA") because "the impact of the IWPCA is too 'tenuous, remote, or peripheral' to warrant

FAAAA preemption."  810 F.3d at 1055.  The Seventh Circuit explained:

> [T]here is a relevant distinction for purposes of FAAAA preemption
> between generally applicable state laws that affect the carrier's
> relationship with its customers and those that affect the carrier's
> relationship with its workforce. Laws that affect the way a carrier
> interacts with its customers fall squarely within the scope of
> FAAAA preemption. Laws that merely govern a carrier's
> relationship with its workforce, however, are often too tenuously
> connected to the carrier's relationship with its consumers to warrant
> preemption.

*Id.* at 1054.  Notably, the IWPCA provides a broad definition of what constitutes an "employee"

using a three-prong "ABC" test, like the one adopted by the California Supreme Court in *Dynamex*.

*Id.* at 1050.

### iii.  First Circuit

In *Schwann*, the plaintiffs alleged that FedEx mischaracterized them as independent contractors when it should have treated them as employees, and that this mischaracterization violated the Massachusetts Independent Contractor Statute ("MICS").  813 F.3d at 432–33.  The Court of Appeals for the First Circuit, considering the district court's rulings on cross motions for summary judgment, held that the FAAAA partially preempted the MICS.  The MICS provided for a three-prong test for classifying workers as employees or independent contractors.  The First Circuit found that the second prong of the MICS classification test would, "in substance, bar FedEx from using any individuals as full-fledged independent contractors" to perform the services provided by the plaintiffs.  *Id.* at 437.  The court thus concluded that the regulatory interference posed by the plaintiffs' application of the second prong was "not peripheral" to FedEx's services and was therefore preempted.  *Id.*

### iv.  Third Circuit

In *Lupian*, the defendant moved to dismiss pursuant to Rule 12(b)(6) on the basis that the FAAAA preempted the plaintiffs' claims under the IWPCA—the same Illinois statute at issue in *BeavEx*.  905 F.3d at 129.  The Court of Appeals for the Third Circuit affirmed denial of the defendant's motion to dismiss, emphasizing the procedural posture of the case.  *Id.* at 138.  Distinguishing *Schwann*, which was decided on summary judgment as opposed to a motion to dismiss, the Third Circuit noted that the complaint did not "show, on its face, that the IWPCA is so far-reaching as to meaningfully affect [the defendant's] prices, routes, rates, or services."  *Id.* at 138.  With no record to demonstrate otherwise at the motion to dismiss stage, the Third Circuit held that "the impact of the IWPCA is too tenuous, remote, and peripheral to fall within the scope of the FAAAA preemption clause."  *Id.* at 136.

### 6.  Application of the FAAAA to Huddleston's Claims

Having considered the decisions discussed above, the court turns to determining whether JCT has established that it is entitled to judgment as a matter of law on the basis that the FAAAA preempts Huddleston's claims under California law.  Because JCT is moving for judgment on the pleadings pursuant to Rule 12(c), the court must accept all factual allegations in the complaint as true and grant all reasonable inferences in Huddleston's favor.  JCT bears the bears the burden of establishing preemption as an affirmative defense.

JCT insists that preemption applies here because Congress chose to use the broad phrase "related to" in the FAAAA's preemption clause and the statutory text must control.  The court agrees that its inquiry into preemption both begins and ends with the language of the statute itself "when the statute's language is plain." *EagleMed*, 868 F.3d at 903.  But the meaning of the phrase "related to" in the FAAAA's preemption clause is not entirely plain.  The Supreme Court has cautioned against reading such language with an "uncritical literalism." *Dan's City*, 569 U.S. at 260 (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655–656 (1995)).

The Supreme Court has interpreted similar language in the preemption clause of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), which supersedes state laws that "relate to" a covered employee benefit plan.  In that context, the Supreme Court explained, "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course . . . ." *Travelers*, 514 U.S. at 655.  The Supreme Court held that courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656.  Regarding ERISA's preemption clause, Justice Scalia—a dedicated textualist—observed:

> [A]pplying the "relate to" provision according to its terms was a
> project doomed to failure, since, as many a curbstone philosopher
> has observed, everything is related to everything else. The statutory
> text provides an illusory test, unless the Court is willing to decree a
> degree of pre-emption that no sensible person could have
> intended—which it is not.

*California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 335–36

(1997) (Scalia, J., concurring) (citation omitted).  Accordingly, courts interpreting the FAAAA

"must draw a line between laws that are significantly 'related to' rates, routes, or services, even

indirectly, and thus are preempted, and those that have 'only a tenuous, remote, or peripheral'

connection to rates, routes, or services, and thus are not preempted."  *Dilts*, 769 F.3d at 643

(quoting *Rowe*, 552 U.S. at 371).

The California Labor Code provisions cited in Huddleston's complaint are not directed

specifically towards motor carriers; instead, they are broad background rules applying to

employers across numerous industries.  The pleadings, on their face, do not establish that the

relevant provisions affect motor carrier prices, routes, and services in more than a "tenuous,

remote, or peripheral" manner.

JCT argues that "the FAAAA preempts *any* state law claim that relates to prices, routes, or

services, regardless of whether it is advanced under a law of general applicability."  [Doc. 83, p. 3].

JCT further argues that whether a statute is a law of general applicability is not even a "relevant

consideration."  [Doc. 131, p. 2].  The court agrees that whether a state statute is a law of general

applicability is not dispositive.  *See Morales*, 504 U.S. at 386 ("[T]here is little reason why state

impairment of the federal scheme should be deemed acceptable so long as it is effected by the

particularized application of a general statute[.]").  But general applicability can be a *relevant*

*consideration* when determining whether the statute "relates to" prices, routes, or services or has

an affect that is too tenuous, remote, or peripheral to warrant preemption.  *Cf. Rowe*, 552 U.S. at

14

375 (finding preemption, noting that state statutes at issue were "not general," did not "affect truckers solely in their capacity as members of the general public," and were aimed "directly at the carriage of goods").

Citing *Ginsberg* and *Wolens*, JCT argues that Huddleston's claims impermissibly use state public policy to alter the terms on which Huddleston agreed to transport property.  [Doc. 75, pp. 15–16].  But *Ginsberg* and *Wolens* "did not announce a rule that preemption occurs whenever a state law effectively alters freely-negotiated contract terms."  *California Trucking*, 903 F.3d at 961 (distinguishing *Ginsberg* and *Wolens*); *see also Lupian*, 905 F.3d at 135 n.10 (distinguishing *Wolens*).

Instead, both *Ginsberg* and *Wolens* concerned customers who objected to changes that an airline made to its "frequent flyer" program.  *Ginsberg*, 134 S.Ct. at 1426–27 (objecting to being kicked out of frequent flyer program); *Wolens*, 513 U.S. at 224–25 (objecting to retroactive changes that devalued frequent flyer credits).  The customers argued that state law compelled the air carrier to provide specific prices or services even if such obligations were absent from the parties' agreements.  *Ginsberg*, 134 S.Ct. at 1431–33 (addressing a claim for breach of the covenant of good faith and fair dealing); *Wolens*, 513 U.S. at 226–27, 115 S.Ct. 817 (reviewing a consumer fraud act claim).  In both cases, the Supreme Court held that the FAAAA preempted state law claims because they would have resulted in a state's normative policies dictating what prices and services an airline had to offer to its customers.  *Ginsberg*, 134 S.Ct. at 1431–33; *Wolens*, 513 U.S. at 227–28.  Here, in contrast, the contractual relationships at issue are between a motor carrier and its workforce, and the relevant normative policies concern the protections afforded to that workforce.  As explained by the Ninth Circuit in *California Trucking*:

> It is one thing to say market efficiencies are promoted when competitive forces compel a carrier to offer certain services or

> prices, and a customer can then enforce these promises—but only
> these promises.  It does not follow that a state law will be preempted
> in every instance where it defeats any term in any carrier contract.

903 F.3d at 962 (citation omitted).

To the extent JCT relies on the *Borello* standard as the basis for its preemption argument, the court finds JCT's argument unavailing.  The *Borello* standard is a general misclassification test that does not apply to motor carriers specifically and does not, by its terms, compel a carrier to use an employee or an independent contractor.  JCT has failed to demonstrate how the standard significantly affects its prices, routes, or services.

The court recognizes that claims arising out of Wage Order 9-2001 may pose special problems for purposes of FAAAA preemption.[1]  In *Dynamex*, the California Supreme Court essentially adopted the Massachusetts version of the "ABC" test for wage-order claims.  416 P.3d at 34 n.23.  And, in *Schwann*, the First Circuit found that the FAAAA preempts the second prong of the Massachusetts test.  813 F.3d at 441.  But the First Circuit decided *Schwann* on a summary judgment record; whereas here JCT has moved for judgment on the pleadings.  *See Lupian*, 905 F.3d at 138 (distinguishing *Schwann* on similar grounds).  Moreover, JCT does not specifically explain how the ABC test under *Dynamex* affects its prices, routes, or services.  To the contrary, JCT contends in its reply brief that the *Dynamex* decision is immaterial because "the issue is not *what* test is used to determine employee status, but rather the use of state law *at all* to rewrite the terms of a contract under which a party agreed to provide transportation services."  [Doc. 83, p. 2].  JCT has simply not shown at this juncture that *Dynamex*'s classification test has a significant impact on its prices, routes, or services.

---

[1] Notably, a trade organization representing trucking companies recently commenced an action in the Eastern District of California seeking a declaration that the FAAAA preempts *Dynamex*'s ABC test.  *See Western States Trucking Ass'n v. Schoorl*, No. 2:18-CV-1989-MCE-KJN, 2018 WL 5920148, at *1 (E.D. Cal. Nov. 13, 2018).

Furthermore, even if JCT could show that the FAAAA preempts the second-prong of the *Dynamex* test, it would not necessarily follow that the FAAAA preempts all of Huddleston's wage-order claims.  In *Schwann*, the First Circuit sought to divine legislative intent and held that the second prong of the Massachusetts statutory test was severable from the first and third prongs. 813 F.3d at 440–41.  Similarly, if it were determined that the FAAAA preempts the second prong of the *Dynamex* test (a common-law standard used to construe California's wage orders), then the California Supreme Court (or a court attempting to predict how the California Supreme Court would rule) would likely modify the test or revert to the pre-*Dynamex* standard, rather than holding that drivers who work for motor carriers are precluded from bringing wage-order claims altogether. *See Pineda v. Williams-Sonoma Stores, Inc.*, 246 P.3d 612, 616 (Cal. 2011) ("[W]e do not construe statutes in isolation, but rather read every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (internal quotation marks omitted)).  Because JCT does not direct its preemption arguments to the *Dynamex* test specifically, its briefing does not address these issues.

Accordingly, JCT is not entitled to judgment on the pleadings on the basis of FAAAA preemption because it has failed to meet its burden to show that the FAAAA preempts any aspect of the state law on which Huddleston's claims rely.

## D.  Preemption under the Truth-in-Leasing Regulations

JCT advances a separate preemption argument based on the federal truth-in-leasing regulations ("TIL Regulations"), 49 C.F.R. Part 376.  JCT argues the TIL Regulations preempt Huddleston's fifth cause of action, which seeks reimbursement of business expenditures pursuant to Cal. Lab. Code § 2802.

Congress has tasked the Department of Transportation ("DOT") with regulating leases between independent truckers and federally regulated motor carriers, and the DOT does so through

its Federal Motor Carrier Safety Administration and the TIL Regulations.  *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016) (citing 49 U.S.C. § 14102(a)).  The objectives of the TIL Regulations are

> to promote truth-in-leasing—a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; . . . to eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers; and . . . to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry.

*Id.* (quoting *Owner–Operator Indep. Drivers Ass'n, Inc. v. Comerica*, 636 F.3d 781, 796 (6th Cir. 2011)).

"Absent express preemptive language in the statute, Congress may implicitly preempt state law 'where the scheme of federal regulation is so pervasive as to make reasonable inference that Congress left no room for the States to supplement it' ('field preemption'), or 'where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' ('conflict preemption')."  *Pueblo of Pojoaque v. New Mexico*, 863 F.3d 1226, 1235 (10th Cir. 2017) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)).  Federal regulations generally have the same preemptive effect as federal statutes.  *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  JCT does not argue that express preemption or field preemption apply here.  Instead, JCT relies on a conflict preemption theory.

JCT highlights three provisions within the TIL Regulations.  [Doc. 75, p. 22].  First, 49 C.F.R. § 376.12(e) provides, in relevant part:

> The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items.

Second, 49 C.F.R. § 376.12(h) provides, in relevant part:

> The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed.

Third, 49 C.F.R. § 376.12(j) provides, in relevant part:

> The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

JCT contends these provisions conflict with Cal. Lab. Code § 2802, which provides, in relevant part, that an employer "shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

JCT does not argue that it is physically impossible to comply with section 2802 and the TIL Regulations.  That is unsurprising because "deductions and allocations can be made compliant with the California Labor Code and be specified in the lease as the TIL Regulations require." *Goyal v. CSX Intermodal Terminals, Inc.*, No. 17-CV-06081-EMC, 2018 WL 4649829, at *3 (N.D. Cal. Sept. 25, 2018).

JCT also has not shown that Cal. Lab. Code § 2802 obstructs the purposes and objectives of Congress in authorizing the TIL Regulations.   "The truth-in-leasing regulations protect independent truckers from motor carriers' abusive leasing practices."  *Fox*, 839 F.3d at 1211.  JCT does not explain how this purpose is inconsistent with section 2802, which aims to protect employees from exploitation.  *See Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-CV-05433-EDL, 2017 WL 1416883, at *8 (N.D. Cal. Apr. 10, 2017) ("Because the primary purpose of the TIL Regulations is to protect drivers by ensuring full disclosure in leases . . . the California Labor

Code does not interfere with the objectives of the TIL Regulations and is not an obstacle to the accomplishment of their purpose.").

Instead, JCT relies on the proposition that "state law cannot proscribe what federal law expressly permits." [Doc. 75, p. 6]. JCT's "permission preemption" argument is predicated on a particular reading of the TIL Regulations. JCT reads the regulations as affirmatively authorizing carriers and drivers to freely negotiate between themselves the allocation of deductions and business expenses in a manner that cannot be regulated by state law. But the language of the TIL Regulations does not support such a reading. Instead, "the language speaks in terms of *disclosure* of those allocations—disclosures which are to be made whether the allocation is the result of negotiations or state statutory mandate." *Goyal*, 2018 WL 4649829, at *4.

For example, JCT interprets 49 C.F.R. § 376.12(h) to "authorize the parties to agree on any deductions that will be taken from the owner-operator's compensation." [Doc. 75, p. 22]. But the Tenth Circuit held in *Fox*:

> Section 376.12(h) does not purport affirmatively to authorize a carrier to deduct any particular fee. Instead, it addresses the procedures and disclosure requirements by which the carrier can deduct an authorized fee from the truckers' compensation.

839 F.3d at 1216. In other words, it "is a provision requiring disclosure and documentation of permissible fees." *Id.* The Tenth Circuit noted that, like section 376.12(h), section 376.12(e) also mandates procedural protections and disclosure requirements. *Id.* at 1217 n.6.

Similarly, JCT interprets 49 C.F.R. § 376.12(j) as affirmatively permitting carriers to charge back insurance costs to drivers. But section 376.12(j)(i) merely says "if" insurance costs are charged back to drivers, then the amount shall be specified in the lease. "The regulation does not say such expense must be charged back nor does it affirmatively authorize and protect the parties' authority to so decide." *Goyal*, 2018 WL 4649829, at *6; *see also Johnson v. Logistics*,

No. 16-CV-06776, 2018 WL 1519157, at *6 (N.D. Ill. Mar. 28, 2018) ("It is clear from the plain language of the Regulations that they simply require that, if certain arrangements are made between an owner-operator and a carrier, those arrangements should be included in the written lease.").

JCT relies heavily on *Valadez*.  In that case, a court in the Northern District of California construed the TIL Regulations to affirmatively permit parties to allocate certain expenses to truck drivers.  2017 WL 1416883, at *11.  The court therefore held that the TIL Regulations partially preempted the plaintiffs' claims under Cal. Lab. Code § 2802.  *Id.*  Recently, however, another court in the same district expressly disagreed with the reasoning in *Valadez* and held that the "TIL Regulations do not bar states from substantively prescribing that allocation; they only require that whatever it is or however it is determined, it must be specified in the lease."  *Goyal*, 2018 WL 4649829, at *4.  This court finds the reasoning in *Goyal* persuasive, particularly in light of the Tenth Circuit's holdings in *Fox*, 839 F.3d at 1216, which this court must follow.  For similar reasons, the court finds unpersuasive two other decisions cited by JCT: *Remington v. J.B. Hunt Transp., Inc.*, No. CV 15-10010-RGS, 2016 WL 4975194, at *3 (D. Mass. Sept. 16, 2016), and *Rodriguez v. RWA Trucking Co.*, 238 Cal. App. 4th 1375, 1393 (2013).

Because JCT has failed to establish that the TIL Regulations preempt Huddleston's claim under Cal. Lab. Code § 2802, JCT is not entitled to judgment on the pleadings with respect to Huddleston's fifth cause of action.

## IV.  Conclusion

WHEREFORE, the defendant's Motion for Judgment on the Pleadings [Doc. 74] is granted in part and denied in part.  The motion is granted with respect to the plaintiff's eighth, ninth, fourteenth, and sixteenth causes of action.  The motion is otherwise denied.

IT IS SO ORDERED this 30th day of November, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE