**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THOMAS HUDDLESTON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 17-CV-549-GKF-FHM |
| JOHN CHRISTNER TRUCKING, LLC, | |
| Defendant. | |

**OPINION AND ORDER**

Before the court is the Motion for Class Certification [Doc. 162] of plaintiff Thomas Huddleston. For the reasons set forth below, the motion is granted as to the proposed California Work Class for Counts 2-7 and 10-11 of the Complaint and the proposed Oklahoma Class for Count 13 of the Complaint. The motion is denied as to the Oklahoma Class for Count 12 of the Complaint and the California Resident Class in its entirety.

## I. Background

Plaintiff Thomas Huddleston brings this putative collective and class action lawsuit against John Christner Trucking, LLC ("JCT"). JCT is a for-hire motor carrier that provides trucking services nationwide. JCT relies, in part, on drivers that operate trucks leased from JCT's leasing company, Three Diamond Leasing, LLC. JCT considers its leasing drivers to be "independent contractors" under relevant laws. The leasing drivers, including Huddleston, transport customer cargo to assigned destinations on behalf of JCT. Huddleston claims JCT misclassifies him and other leasing drivers as independent contractors, rather than employees, and thus violates a variety of state and federal labor laws. Huddleston seeks to represent other leasing drivers in a collective

action under the Fair Labor Standards Act ("FLSA") and class actions under California and Oklahoma law.

JCT filed a motion to dismiss, or in the alternative, to transfer venue on August 8, 2017. The United States District Court for the Eastern District of California granted the motion in part and transferred the case to this court on September 28, 2017.  On February 23, 2018, Huddleston filed a motion for conditional certification of a collective action under the FLSA.  This court granted the motion in part and denied it in part, granting conditional certification to the following collective:

> All current and former individuals who provided transportation services for John Christner Trucking, LLC ("JCT") within the United States at any time during the period beginning May 1, 2015, and ending May 1, 2018, who entered into an Independent Contractor Operator Agreement with JCT, and entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC, who were classified as independent contractors.

More than 500 members of the collective have provided notice of their consent to join this lawsuit. On April 16, 2018, JCT filed a motion for judgment on the pleadings.  This court granted the motion as to Counts 8, 9, 14, and 16 of the Complaint and otherwise denied the motion.

Huddleston filed the instant motion for class certification on the California (Counts 2-7 and 10-11) and Oklahoma (Counts 12-13) state law claims on April 22, 2019.  A few days before, on April 19, 2019, JCT filed a "Motion to Clarify and Determine Applicable Law" arguing that Oklahoma, not California, labor law applies in this case.  This court struck the latter motion because it was not "efficient or fair to resolve the choice-of-law issue at this juncture on JCT's standalone motion." [Doc. 196, p. 2].  The court directed JCT to raise its choice-of-law arguments in its response to Huddleston's class certification motion.  JCT filed its response, Huddleston replied, and the court heard oral argument on the motion.

## II.  Proposed Classes

Huddleston seeks certification of two classes for eight causes of action under California law: failure to pay minimum wage, failure to pay for all hours worked, failure to provide meal and rest breaks, failure to reimburse necessary business expenditures, failure to maintain proper payroll records, failure to provide itemized wage statements, waiting time penalties, and unfair business practices.  [Doc. 162, pp. 10-11, n. 1].  First, Huddleston proposes a "California Work Class" defined as follows:

> All current and former individuals who provide transportation services for John Christner Trucking, LLC within the United States, at any time beginning April 13, 2013, and continuing through the present, who (1) entered into an Independent Contractor Operator Agreement with JCT, (2) entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC, (3) were classified as independent contractors, and (4) performed at least one pick-up or delivery in the State of California.

[*Id.*, p. 11]. According to Huddleston, "[t]he California Work Class proposes to assert California wage and hour claims to the extent these individual performed delivery services and related activities within California's borders."  [*Id.*, n. 2].  Second, Huddleston proposes a "California Resident Class" defined as:

> All current and former individuals who provide transportation services for John Christner Trucking, LLC at any time beginning April 13, 2013, and continuing through the present, who (1) entered into an Independent Contractor Operator Agreement with JCT, (2) entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC, (3) were classified as independent contractors, and (4) reside in the State of California.

[*Id.*].  In his reply brief, Huddleston states that he "no longer seeks to apply California law to activities taking place outside the State of California on behalf of the California Resident Class." [Doc. 205, p. 2].  Consequently, the only distinction between the proposed California classes is that the California Resident Class is composed exclusively of California residents.  The court will

refer to the California Work Class and the California Resident Class collectively as the "California Classes."

Huddleston also alleges violations of Oklahoma law.  Huddleston claims JCT's marketing practices violate the Oklahoma Business Opportunity Sales Act, 71 Okla. Stat. §§ 801–829 ("OBOSA"), and the Oklahoma Consumer Protection Act, 15 Okla. Stat. §§ 751 – 765 ("OCPA").  Huddleston seeks to certify an "Oklahoma Class" for his two claims under Oklahoma law. [Doc. 162, p. 12].   Huddleston proposes the "Oklahoma Class" as follows:

> All current and former individuals who provide transportation services for John Christner Trucking, LLC within the United States, at any time during the period beginning April 13, 2014, and continuing through the present, who (1) entered into an Independent Contractor Operator Agreement with JCT, and (2) entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC.

[*Id.*].  The Oklahoma Class is broader than the California Classes because it includes all leasing drivers, not just those who reside or performed deliveries in California.

### III.  Legal Standard

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *D.G. ex rel. Stricklin v. Devaugn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quoting *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004)).   This court "must undertake a 'rigorous analysis' to satisfy itself that a putative class meets the applicable Rule 23 requirements."  *Menocal v. GEO Group, Inc*., 882 F.3d 905, 913 (10th Cir. 2018) (citing *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014)).

Rule 23(a) sets forth four threshold requirements: "(1) the class is so *numerous* that joinder of all members is impracticable; (2) there are questions of law or fact *common to the class*; (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class;

and (4) the representative parties will fairly and *adequately protect* the interests of the class." *CGC Holding*, 773 F.3d at 1086 (alteration in original) (quoting Fed. R. Civ. P. 23(a)).  "In other words, the class must demonstrate the requisite *numerosity, commonality, typicality, and adequacy* to proceed with a class action." *Id.* (emphasis original).

Here, the parties have stipulated that the California Classes and the Oklahoma Class satisfy the numerosity requirement.  There are 490 members of the California Resident Class and over 3,000 members in the California Work Class and in the Oklahoma Class.  The members of the California Resident Class, by definition, reside in California and the members of the California Work Class reside in 43 different states.  [Doc. 201, p. 28]; *see Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) ("[T]he numerosity requirement is not a question of numbers.  Rather, there are several factors that enter into the impracticability issue.  Such factors may include the nature of the action, the size of the individual claims and the location of the members of the class or the property that is the subject matter of the dispute." (internal quotation marks and citations omitted)).  It would clearly be impracticable to join hundreds, if not thousands, of plaintiffs from across the country in this action.

Further, Huddleston has shown he will adequately protect the interests of the classes.  "Rule 23(a) demands that 'the representative parties will fairly and adequately protect the interests of the class.'"  *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002) (quoting Fed. R. Civ. P. 23(a)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id.* at 1187-88 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Huddleston avers, and defendant does not dispute, that "[t]here are not conflicts of interest or antagonism between Plaintiff and his counsel and the Classes." [Doc. 162, p. 33]. Moreover, "[t]o represent himself and the Class, Plaintiff retained counsel highly experienced in class action litigation. Plaintiff and his counsel have prosecuted, and will continue to prosecute, this action vigorously on behalf of the Class." [*Id.*, pp. 33-34]. Finding no reason to doubt either the absence of conflicts or whether plaintiff and his counsel will continue to prosecute this action vigorously, the court concludes the adequacy requirement is satisfied for all classes.

The remaining Rule 23(a) issues are commonality and typicality. "A finding of commonality requires only a single question of law or fact common to the entire class. Mere allegations of systemic violations of the law, however, will not satisfy Rule 23(a)'s commonality requirement; a discrete legal or factual question common to the class must exist." *D.G.*, 594 F.3d at 1195 (internal citations omitted). "In other words, the class members' claims must 'depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Menocal*, 882 F.3d at 914 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "To satisfy the typicality requirement, a party seeking class certification must demonstrate that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Id.* (quoting Fed. R. Civ. P. 23(a)(3)). "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Id.* (quoting *Colorado Cross Disability Coal.*, 765 F.3d at 1216).

If the proposed classes "meet the four criteria under Rule 23(a)," then the court must consider whether the classes satisfy "at least one of the three alternative class-types under Rule

23(b)."  *CGC Holding*, 773 F.3d at 1086.  "First, Rule 23(b)(1) addresses situations where 'incompatible standards of conduct for the party opposing the class' would arise without class treatment."  *Id.* (quoting Fed. R. Civ. P. 23(b)(1)).  "Second, Rule 23(b)(2) covers class actions for declaratory or injunctive relief where the party defending against the class 'has acted or refused to act on grounds that apply generally to the class.'"  *Id.* (quoting Fed. R. Civ. P. 23(b)(2)).  Third, "Rule 23(b)(3) is available where 'questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).  "In other words, class status is appropriate as long as plaintiffs can establish an aggregation of legal and factual issues, the uniform treatment of which is superior to ordinary one-on-one litigation."  *Id.*  "In deciding whether the proposed class meets these requirements, the district court 'must accept the substantive allegations of the complaint as true,' though it 'need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints.'"  *D.G.*, 594 F.3d at 1194 (quoting *Shook*, 386 F.3d at 968).

### IV.  Certification of the California Classes

Huddleston seeks to certify the California Classes for his eight California claims.  As a preliminary matter, the court will consider whether Oklahoma's choice of law rules allow application of California labor law to this dispute.  *See Huber v. Taylor*, 469 F.3d 67, 76 (3d Cir. 2006) ("[O]ur first task is to ascertain what jurisdiction's law applies."); *Powers v. Lycoming Engines*, 328 F. App'x 121, 124 (3d Cir. 2009) (unpublished) ("A necessary precondition to deciding Rule 23 issues is a determination of the state whose law will apply.").

## A.  Choice-of-Law Analysis

JCT argues that the Court should deny certification because Huddleston has failed to demonstrate that California's wage and hour laws apply to him or any other putative class member. It contends the state labor laws of Oklahoma, not California, govern the alleged employment relationship between Huddleston and JCT.  Accordingly, JCT avers, Huddleston "lacks standing to seek relief under the California law at issue here, precluding his appointment as representative of any class members who might be covered by California law." [Doc. 201, pp. 27-28].[1]  Additionally, JCT argues that certification would be improper "because there appears to be no manageable way to determine which class members, if any, might be covered by California law under Oklahoma's choice of law rules."  [*Id.*, p. 28].  In reply, Huddleston argues that there is no choice-of-law issue; rather, the inquiry is "whether Class Members can assert claims under California law for work performed within California's borders."  [Doc. 205, p. 3].  Put another way, in Huddleston's view, "[t]here is no 'choice' between California and Oklahoma law; either California law applies, or Plaintiff's California claims will be dismissed." [*Id.*].

### 1.  Oklahoma's choice-of-law principles apply.

This action was originally filed in the Eastern District of California. [*See* Doc. 1].  The Eastern District of California transferred the case to this court pursuant to a valid forum selection clause under § 1404(a).  [*See* Doc. 15].  Ordinarily, federal courts receiving a transferred case apply the choice-of-law rules of the original court.  *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  However, the Supreme Court does "not apply the *Van Dusen* rule when a transfer stems from enforcement of a forum-selection clause:  The court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right."  *Atlantic*

---

[1] The court addresses JCT's standing argument in Section IV.C. ("Typicality Analysis"), *infra*.

*Marine Const. v. United States Dist. Court*, 571 U.S. 49, 65-66 (2013).  Accordingly, the ordinary rule directing courts to apply "the substantive law, including choice of law rules, of the forum state . . . when [exercising] supplemental jurisdiction over state law claims in a federal question lawsuit" applies here.  *BancOklahoma Mortg. Corp. v. Capital Tile Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999).  This court sits in Oklahoma; accordingly, Oklahoma's choice-of-law rules apply.

**2.  A conflict exists between the labor laws of California and Oklahoma.**

"[T]he threshold question in determining the application of choice of law rules is whether there is a true conflict, a false conflict, or no conflict."  *National Casualty Co. v. Western Express*, 356 F. Supp. 3d 1288, 1294 (W.D. Okla. 2018) (quoting *Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co.*, 363 P.3d 1270, 1274 (Okla. Civ. App. 2015)).

A true conflict exists with respect to the law applicable to the key inquiry in this case: are the proposed class members improperly classified as independent contractors?  "In determining whether an individual is an employee rather than an independent contractor," Oklahoma courts look to "the economic realities of the relationship . . . and the focal point is whether the individual is economically dependent on the business to which he renders service."  *Zagaruyka & Assoc. v. HealthSmart Benefit Solutions, Inc.*, No. CIV-18-697-G, 2019 WL 5536383, at *4 (W.D. Okla. Oct. 25, 2019) (citing *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998); *Page v. Hardy*, 334 P.2d 782, 784 (Okla. 1959); Okla. Admin. Code § 380: 30-1-2)).  In contrast, California courts look to "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 404 (Cal. 1989).  California also uses a broader standard for certain claims arising under California's Industrial Welfare Commission's ("IWC") definition of employment.  "To employ, then, under the IWC's definition, has three alternative definitions.  It means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or

9

permit to work, or (c) to engage, thereby creating a common law employment relationship."

*Dynamex Operations W. v. Superior Court*, 416 P.3d 1, 10 (2018) (quoting *Martinez v. Combs*, 231

P.3d 259, 278 (Cal. 2010)).  In *Dynamex*, the California Supreme Court developed what is known

as the "ABC" test for interpreting the "suffer or permit to work" prong in the *Martinez* decision.

The three requirements of the ABC test are:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Dynamex*, 416 P.3d at 35.  If a purported employer fails to establish any one of the three prongs,

the worker cannot be classified as an independent contractor.  *Id.*  Neither of California's

"employee" tests match Oklahoma's "economic reality" approach. *See id.* ("[A]s a matter of

legislative intent, the IWC's adoption of the suffer or permit to work standard in California wage

orders was not intended to embrace the federal economic reality test."). Therefore, there is a

substantive conflict between Oklahoma and California law.

Further, Oklahoma law exempts "employee[s] of any employer who [are] subject to the

provisions of any Federal Fair Labor Standards Act or to any Federal Wage and Hour Law." *See*

40 Okla. Stat. § 197.4(e)(7); [Doc. 205, p. 4 ("Oklahoma has **no** wage and hour laws applicable to

Plaintiff and the Classes. Plaintiff and Class Members are exempted from Oklahoma's definition

of 'employee.'")].  By exempting employees protected by federal law, Oklahoma has effectively

adopted federal employment standards for workers like plaintiff and the proposed class members.

*See, e.g. Jones v. OS Restaurant Servs., Inc.*, 245 P.3d 624, 625 (Okla. Civ. App. 2010) (holding

employer subject to FLSA requirements is exempt from the Oklahoma Minimum Wage Act).

Plaintiff argues the absence of wage and hour protections above and beyond those provided by

federal law for the California Classes in Oklahoma means there is no applicable law to this dispute in Oklahoma. [*See* Doc. 205, p. 4]. That conclusion does not necessarily follow. Oklahoma has made a policy decision to defer to minimum federal law standards for FLSA-subject employers, like JCT. California, on the other hand, generally requires more of employers than the minimum standards mandated by federal law. *Compare* 29 U.S.C. § 206 (setting federal minimum wage at $7.25 an hour) *with* Cal. Lab. Code § 1182.12 (setting California minimum wage at $12 an hour from January 1, 2020 through December 31, 2020). Accordingly, a conflict exists between Oklahoma and California law as to whether "employees" are entitled to minimum federal protections under Oklahoma law or to increased protections under California law.

**3. The court will apply California law to the California Classes' claims.**

The parties agree that the court must consider which state has the "most significant relationship" to the parties and the claims to determine which conflicting law to apply.[2] [Doc. 201, p. 32; Doc. 205, p. 6]. To decide which state has "the most significant relationship to the occurrence and the parties," Oklahoma courts looks to "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship,

---

[2] The court agrees with the parties that the "most significant relationship" test is the correct standard here. "Oklahoma has not yet determined whether the 'most significant relationship' test would apply to statutory claims." *Patten Air, LLC v. Howard*, No. CIV-18-0004-F, 2018 WL 9837822, at *3 (W.D. Okla. Oct. 15, 2018). However, courts typically treat statutory claims as claims sounding in tort in choice of law analyses. *See, e.g. id.* (applying "most significant relationship test" to statutory deceptive trade and unfair practice claims); *see also Portillo v. National Freight, Inc.*, 323 F. Supp. 3d 646, 658 (D.N.J. 2018) ("Statutory wage claims have been construed as tort claims."). "For tort claims, Oklahoma follows the 'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." *Patten Air, LLC*, 2018 WL 9837822, at *3 (citing *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 619 (10th Cir. 1998)). "In other words, the court determines which state has the most significant relationship to the occurrence and the parties." *Id.* (citing *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974)).

if any, between the parties occurred." *Martin v. Gray*, 385 P.3d 64, 67 (Okla. 2016) (quoting *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974)).

a.      *The alleged injury occurred in California.*

Huddleston intends to assert claims under California law exclusively for work performed in California.  [Doc. 162, p. 11, n. 2; Doc. 205, p. 2].  He alleges that JCT injured the California Classes by depriving them of various California labor protections for work performed in that state. [*See generally* Doc. 1, p. 2, ¶ 1].  The alleged injury to members of the California Classes occurred in California "where the class member was allegedly forced to miss a break, or performed work for which the class members did not receive the minimum wage, or incur[red] a business expense that JCT did not reimburse." *See* Doc. 201, p. 35.

b.      *The conduct causing the injury occurred in Oklahoma.*

JCT is an Oklahoma corporation with its principal place of business in Sapulpa, Oklahoma. [Doc. 1, p. 5, ¶ 19].  The decision to classify plaintiff and the California Classes as "independent contractors" occurred at JCT's headquarters in Oklahoma.  [Doc. 201, pp. 17, 34; *see also* Doc. 205, p. 6, n.12].  Accordingly, the conduct allegedly causing the injury occurred in Oklahoma.

c.      *The parties' residences vary.*

Plaintiff Thomas Huddleston is a resident of California.  [Doc. 1, p. 4, ¶ 18].  Defendant JCT is an Oklahoma corporation with its principal place of business in Sapulpa, Oklahoma.  [*Id.*, p. 5, ¶ 19].  Proposed members of the California Resident Class are, by definition, residents of California.  [Doc. 162, p. 11].  Proposed members of the California Work Class are residents of 43 different states.  [Doc. 201, p. 17; Doc. 205, p. 7].  "Because the states of domicile, residence, and place of business for the parties is varied, the court concludes that these contacts are of lesser importance." *See Patten Air, LLC*, 2018 WL 9837822, at *3.

     d.     *The parties' contractual relationship is centered in Oklahoma.*

Plaintiff and proposed class members attended a "mandatory orientation at JCT's facility in Sapulpa, Oklahoma." [Doc. 162, p. 18]. "During orientation, Drivers [were] required to complete two agreements: a Lease Agreement; and an Independent Contractor Operator Agreement ('ICOA')." [*Id.*, p. 19; *see also* Doc. 201, p. 17]. Plaintiff emphasizes that "[t]hese are the agreements that control the relationship between Lease Drivers and JCT." [Doc. 162, p. 19]. In the ICOA, the parties agreed to be bound by Oklahoma law. [Doc. 15, p. 2].[3] The parties' relationship is governed by two contracts signed in Oklahoma subject to Oklahoma law. Accordingly, the parties' contractual relationship is centered in Oklahoma.

     e.     *California has the most significant relationship to the California Classes' claims here.*

In *Brickner*, "the Supreme Court [of Oklahoma] clearly held that, in accord with the Restatement of Conflicts analysis, the law of the place of the injury applies unless some other state has a more significant relationship to the occurrence and the parties." *Edwards v. McKee*, 76 P.3d 73, 76 (Okla. Civ. App. 2003) (citing *Brickner*, 525 P.2d at 637); *see also* Restatement (Second) of Conflict of Laws § 146 cmt. c (1971) ("The likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those relatively rare situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties."). California, the place of injury, "has, and has unambiguously

---

[3] The parties' contractual choice-of-law provision does not control the court's choice-of-law analysis for plaintiff's statutory claims. As the Eastern District of California noted in this case, "[w]hether JCT violated the California Labor Code and Wage Orders will be answered not by looking to the ICOA but instead by the statutes and regulations governing Huddleston's claims." [Doc. 15, p. 17]; *see also Trout v. Organizacion Mundial de Boxeo, Inc.*, No. Civ-16-00097 JCH/LAM, 2017 WL 3052496, at *9 (D.N.M. July 5, 2017) (concluding that a choice-of-law clause in a contract "does not necessarily bar non-contractual causes of action under the laws of another state"); *Sanchez v. Q'Max Solutions, Inc.*, No. 17-cv-01382-CMA-KLM, 2018 WL 1071133, at *3 (D. Colo. Feb. 27, 2018) ("Plaintiff's Colorado claims are non-contractual, *i.e.* they do not arise from the [contract] but rather from well-established state labor laws.").

asserted, a strong interest in applying [its labor] law to all nonexempt workers, and all work performed, within its borders." *Sullivan v. Oracle Corp.*, 254 P.3d 237, 245 (Cal. 2011). While Oklahoma also has an interest in regulating the wage and hour law applicable to Oklahoma employers, its interest is not as significant as California's where *all* the work was performed within California.[4]

Indeed, any other conclusion may run afoul of the Constitution. *See Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336 (1989) ("[T]he Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State.") (internal quotation marks and citation omitted); *see also KT & G Corp. v. Att'y Gen.*, 535 F.3d 1114, 1143 (10th Cir. 2008) (a statute violates the dormant Commerce Clause "if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question" (citation omitted)); *Cotter v. Lyft*, 60 F. Supp. 3d 1059, 1063 (N.D. Cal. 2014) (applying California law to "residents of other states, who drive . . . exclusively in those states, and who apparently never set foot in California in furtherance of their work with the company" would "raise serious constitutional concerns"). Thus, while Oklahoma undoubtedly has an interest in this dispute, the court concludes this is not one of those "rare situations" where the state of injury "bears little relation to the occurrence and the parties." *See* Restatement (Second) of Conflict of Laws § 146 cmt. c (1971). California's relationship to the parties and the claims asserted here is the most significant. The court will apply California law to the California Classes' claims to determine whether class certification is appropriate here.[5]

_____

[4] The California Work Class members' states of residence also have an interest in regulating the labor laws applicable to their residents. However, because all relevant work was performed within California's borders, the residency states' interests are not more significant than California's.

[5] The application of California law, as opposed to the law of another state, for purposes of class certification does not foreclose any future preemption argument. *See Boyd Rosene & Assoc., Inc.*

As Huddleston noted at oral argument, the California Resident Class is "subsumed within" the California Work Class.  [Doc. 208, p. 25].  Once Huddleston narrowed his claims to work performed in California, the distinction between the two classes lost any significance except to the extent the court's choice-of-law analysis turned on the residency of the parties.  [*Id.*].  Because it does not—the court would apply California law to both California Classes—the court denies Huddleston's motion to certify a California Resident Class.

The court will now consider whether the proposed class satisfies Rule 23's commonality and typicality requirements.[6]

## B.  Commonality Analysis

"A finding of commonality requires only a single question of law or fact common to the entire class."  *Menocal*, 882 F.3d at 914 (quoting *D.G.*, 594 F.3d at 1195).  Here, whether or not JCT misclassified the California Work Class as independent contractors is a common question. *See Moreno v. JCT Logistics, Inc.*, No. 17-2489-JGB, 2019 WL 3858999, at *8 (C.D. Cal. May 29, 2019) ("Courts have frequently found the commonality requirement satisfied based on the common issue of whether class members were misclassified as independent contractors instead of employees."); *In re FedEx Ground Package Sys., Inc.*, 273 F.R.D. 424, 459 (N.D. Ind. 2008) ("Given the ubiquity of the Operating Agreement, FedEx Ground's right to control its drivers is a common question [under California law].").  As noted above, there are two applicable employment tests for plaintiff's claims under California law: the *Martinez*-ABC test and the *Borello* test.  As in

---

*v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1124 (10th Cir. 1999) (Preemption is "[u]nlike choice-of-law principles which are a zero-sum game (either state A or state B's law will be applied).").  The court's consideration of defendant's notice of supplemental authority [Doc. 211], concerning the preemption of California's misclassification tests as applied to motor carriers, is better suited for a later stage.

[6] Huddleston has satisfied the adequacy and numerosity requirements for the California Work Class.  *See* Section III, *supra*.

*Moreno*, this court "sees no reason why the applicability of different tests to different claims would defeat commonality, as long as those tests apply equally to all class members." *Moreno*, 2019 WL 3858999, at *8. The commonality requirement is satisfied.

## C. Typicality Analysis

"Rule 23(a)(3) requires the claims of Named Plaintiffs to be typical of the claims of the class they seek to represent." *D.G.*, 594 F.3d at 1198. "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198-99 (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

JCT argues that Huddleston's claims are not typical of the California Work Class because he lacks standing to bring claims under California law: "Huddleston's alleged employment is governed by Oklahoma law, and Huddleston cannot represent any class member covered by the law of California." [Doc. 201, p. 30]. "Standing is an inherent prerequisite to the class certification inquiry." *Sanchez*, 2018 WL 1071133, at *2 (citation omitted).

Huddleston has standing to bring his claims under California law. Huddleston is a resident of California and alleges "over 50%" of his "driving activity took place in the State of California." [Doc. 1, p. 5, ¶ 20]. "If an employee resides in California, receives pay in California, and works exclusively, or principally in California, then that employee is a 'wage earner of California' and presumptively enjoys the protection of IWC regulations." *Tidewater Marine Western, Inc. v. Bradshaw*, 927 P.2d 296, 309 (Cal. 1996).

Indeed, in Huddleston's view, California labor law presumptively applies to *all* work performed in California. [Doc. 208, p. 8]. However, as the Ninth Circuit recently noted, "[t]here is no controlling California precedent on the question whether California labor law applies to an employee who works for an out-of-state employer and does not work principally, or even for days

at a time, in California." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018).   In

*Oman*, the Ninth Circuit certified two questions to the California Supreme Court:

> 1. Do California Labor Code §§ 204 and 226 [Huddleston's Third and Seventh Causes of Action] apply to wage payments and wage statements provided by an out-of-state employer [like JCT] to an employee who, in the relevant pay period, works in California only episodically and for less than a day at a time?
>
> 2. Does California minimum wage law [Huddleston's Second Cause of Action] apply to all work performed in California for an out-of-state employer by an employee who works in California only episodically and for less than a day at a time?

*Oman*, 889 F.3d at 1076-77; *see also Ward v. United Airlines*, 889 F.3d 1068, 1070 (9th Cir. 2018).

The California Supreme Court has yet to provide answers to these questions.   The California

Supreme Court may agree with Huddleston's view that work performed in California for out-of-

state employers, even when minimal, triggers application of California labor law.   *See Sarviss v.*

*Gen. Dynamics Info. Tech.*, 663 F. Supp. 2d 883, 900 (C.D. Cal. 2009) (concluding "the

determinative issue is whether an employee works principally in California"); *Sullivan v. Oracle*

*Corp.*, 254 P.3d 237, 247 (Cal. 2011) (holding California's overtime provisions apply to day-long

work performed in California for a California employer by an out-of-state resident).   Whether the

California Supreme Court agrees or not, JCT may persuade this court that California's laws are

preempted by federal law.   That possibility, however, is insufficient to defeat class certification in

the first instance.   At this stage, whether California law presumptively applies to all work

performed in California for out-of-state employers is an unsettled legal question capable of class-

wide resolution.   *See Ward v. United Airlines, Inc.*, No. 3:15-cv-02309-WHA, 2016 WL 3906077,

at *5 (N.D. Cal. July 19, 2016) (granting summary judgment to defendant in class action by holding

that California's labor laws regarding accurate wage statements did not apply to employees who

work primarily outside of California); *see also Shook v. Indian River Transport Co.*, 236 F. Supp.

3d 1165 (E.D. Cal. 2017) (considering extent to which California labor law applied to trucking activities performed in and out of California on summary judgment).

Huddleston and the proposed class members' claims are based on the same legal theories under California law, which Huddleston has standing to assert. "Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court; there is no further, separate 'class action standing' requirement.'" Newberg on Class Actions, § 2:1 (2019) (citing cases). The typicality requirement is satisfied.

### D.  Rule 23(b) Analysis

"A district court may certify a class if the proposed class satisfies . . . one of the types of classes in Rule 23(b)." *D.G.*, 594 F.3d at 1194. Huddleston asserts the California Work Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3). [Doc. 162, p. 34].  Rule 23(b)(3) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

### 1.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  While Rule 23(b)(3) requires a common question, the requirement is more stringent than the Rule 23(a) commonality requirement. *Id.* at 623-24 ("Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding.").  In applying the predominance requirement, the Tenth Circuit instructs courts to first "*characterize* the issues in the case as common or not, and then *weigh* which issues

predominate." *Menocal*, 882 F.3d at 915 (emphasis original) (quoting *CGC Holding*, 773 F.3d at 1087). Courts do so by "consider[ing] . . . how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual." *Id.* (quoting *CGC Holding*, 773 F.3d at 1087). Because the court must consider which elements of the class's underlying causes of action are amenable to common proof, it is inevitable that the merits will "bleed[] into the class certification to some degree." *Id.* (quoting *CGC Holding*, 773 F.3d at 1087). However, "[f]or the purposes of class certification, [courts'] primary function is to ensure that the requirements of Rule 23 are satisfied, not to make a determination on the merits of the putative class's claims." *Id.* (quoting *CGC Holding*, 773 F.3d at 1087).

Huddleston argues that common issues predominate because whether JCT misclassified members of the California Classes under either the *Borello* or the *Martinez*-ABC test is the "ultimate merits burden" and "can be answered with evidence common to the class as opposed to a plaintiff-by-plaintiff inquiry." [Doc. 162, p. 34]. Once misclassification is established, according to Huddleston, "JCT will immediately be liable for systematic violations of California wage and hour laws . . . . The only issue remaining for trial will be the amount of damages JCT owes to the California Classes." [*Id.*, p. 41]. JCT, on the other hand, argues "[t]he Court should reject certification of Huddleston's California claims because to establish liability against JCT on each claim, the putative class members will have to present evidence that varies from member to member." [Doc. 201, p. 37].

a.     *Misclassification under Martinez-ABC*

In *Dynamex*, the California Supreme Court adopted the broad "ABC" test for California wage order claims and concluded "that under a proper understanding of the suffer or permit to work standard there is, as a matter of law, a sufficient commonality of interest" to permit a class action on misclassification on whether "drivers are employees or independent contractors." 416

19

P.3d at 42.  The California Supreme Court analyzed the three prongs of the ABC test: "(A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business." *Id.* at 40.  "The hiring entity's failure to prove any one of these three prerequisites will be sufficient in itself to establish that the worker is an included employee, rather than an excluded independent contractor." *Id.*  Here, JCT concedes that "the B prong presents a common question for the class." [Doc. 201, p. 42].

Huddleston intends to show JCT cannot satisfy the A prong "by looking at nothing more than the four corners of JCT's uniform contracts and the testimony of JCT's corporate witnesses." [Doc. 162, pp. 36-37].  Huddleston argues that uniform evidence—namely, the form Lease Agreement and ICOA executed by the California Work Class—will show class members are not "free from the control" of JCT "under the contract[s] for the performance of the work."  JCT does not dispute that the California Classes entered into uniform agreements.  [Doc. 201, pp. 15-16]. Instead, JCT argues "[t]he contract contains no evidence sufficient to convert an independent contractor to an employee." [Doc. 201, p. 38].  Whether JCT is correct is a legal question common to the class.  *See Johnson v. Serenity Transportation, Inc.*, No. 15-cv-2004-JSC, 2018 WL 3646540, at *10 (N.D. Cal. Aug. 1, 2018) (finding right to control may be proved on a class-wide basis using uniform contracts).

Under prong A, JCT must also show the drivers have "freedom from the control of the hiring entity in the performance of the work . . . in fact."  *Dynamex*, 416 P.3d at 36; *see also Martinez v. Flower Foods, Inc.*, No. CV-15-5112 RGK, 2016 WL 10746664, at *11 (C.D. Cal.

Feb. 1, 2016) ("Where, as here, there exists a uniform written agreement, the operative question is not simply whether practical variations among drivers demonstrate a difference in the actual exercise of control, but whether such variations reflect a more fundamental difference in the right to control.").   JCT argues practical variations between the class members preclude certification. For example, some proposed class members hire second drivers and operate as a team. [Doc. 201, p. 39].  Others "select their own fueling stations" and decline loads "for various reasons."  [*Id.*]. JCT points out "how these Contractors operate under the ICOA varies."  [*Id.*, p. 11].  In JCT's view, the variations amongst class members are permissible under the ICOA and therefore evince an unvarying absence of the right to control under the contracts.  Whether JCT is correct is a merits question common to the class to be answered at a later stage.

To satisfy prong C, an employer "must prove that the worker is customarily engaged in an independently established trade, occupation, or business." *Dynamex*, 416 P.3d at 39.  Where an individual takes steps toward independence "through incorporation, licensure, [and] advertisements," that individual may qualify as an independent contractor. *Id.*  Huddleston argues prong C can be evaluated on a class-wide basis "by looking to JCT's uniform policy prohibiting Drivers from hauling for other carriers, and JCT's complete control over load assignments and Drivers' delivery services."  [Doc. 162, p. 39].  In *Dynamex*, the California Supreme Court determined prong C could be adjudicated on a class-wide basis because "the class of drivers . . . is limited to drivers who, during the relevant time periods, performed delivery services only for Dynamex.  The class excludes drivers who performed delivery services for another delivery service or for the driver's own personal customers; the class also excludes drivers who had employees of their own." *Dynamex*, 416 P.3d at 42.  Huddleston seeks to certify a similar class here.  First, the California Work Class only includes those who "lease a truck from JCT, and then lease the truck

back to JCT for its *exclusive* use." [Doc. 162, p. 11]. Further, Huddleston intends to exclude any non-driver lease-holders from class membership. "Plaintiff now moves to certify three class of *Drivers*." [*Id.*, p. 10; *see also id.*, p. 11, n. 2 (the Classes will only seek relief "to the extent [they] *performed delivery services* and related activities within California's borders"). Accordingly, "the pertinent question under prong C of the ABC test is amenable to resolution on a class basis." *Dynamex*, 416 P.3d at 42. The *Martinez*-ABC analysis involves common questions.

b.      *Misclassification under Borello*

In *Borello*, the Supreme Court of California "enumerated a number of indicia of an employment relationship, the most important of which is the 'right to discharge at will, without cause.'" *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010) (quoting *Borello*, 769 P.2d at 404). As the Ninth Circuit has explained:

> *Borello* endorsed other factors derived from the Restatement (Second) of Agency that may point to an employment relationship: (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.
>
> *Borello* also approvingly cited five factors adopted by cases in other jurisdictions. These include: (1) the alleged employee's opportunity for profit or loss depending on his managerial skill; (2) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (3) whether the service rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service rendered is an integral part of the alleged employer's business.

*Id.* at 900-01 (internal citations omitted).  The California Supreme Court considered all factors to be "logically pertinent to the inherently difficult determination whether a provider of services is an employee or an excluded independent contractor." *Id.* at 901 (citing *Borello*, 769 P.2d at 407). "Nevertheless, 'the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations.'" *Id.* (quoting *Borello*, 769 P.2d at 404).  "[N]o one factor is decisive, and that it is the rare case where the various factors will point with unanimity in one direction or the other." *Id.* (quoting *NLRB v. Friendly Cab Co.*, 512 F.3d 1090, 1097 (9th Cir. 2007)).

Huddleston argues JCT's "right to discharge at will, without cause" can be shown by uniform evidence, namely the uniform contracts which govern the relationship between JCT and the California Work Class.  "The rights, responsibilities, and controls between and among the parties are spelled out in JCT's uniform agreements and corporate testimony." [Doc. 162, p. 39]. In JCT's view, however, "[t]his evidence is not sufficient to provide common answers to the questions presented by the *Borello* test." [Doc. 201, p. 38].  Defendant primarily relies on *Martinez v. Flower Foods, Inc.*, for the proposition that "having a uniform contract is not sufficient to merit certification." [Doc. 201, p. 38].  However, in that case, the uniform agreement set a "broad standard that [did] not actually mandate any specific behavior." *Martinez*, 2016 WL 10746664, at *11.  The plaintiff argued the hiring entity resolved any ambiguities in the contract at a two-week training course. *Id.*  However, the court determined "not all drivers actually attended the training." *Id.* The court reasoned "any examination of the right to control would necessarily spawn a host of individualized inquiries." *Id.*  In contrast here, all class members attended mandatory orientation. [Doc. 162, p. 18; Doc. 201, p. 14].  Further, the contracts at issue appear to set more than "broad and vague" standards.  [*See* Doc. 162, pp. 18-26; Doc. 201, pp. 14-16]; *see Johnson*, 2018 WL

3646540, at *10 ("As the job description for all drivers is uniformly set forth in the Independent Contractor Agreement and all drivers sign essentially the same Agreement, the degree of control the contracts spell out is uniform across the class." (internal alterations, quotation marks, and citation omitted)).

Moreover, Huddleston contends "most if not all of the secondary factors will be decided on common proof." [Doc. 162, p. 39 (internal quotation marks omitted)]. First, Huddleston argues that whether class members are "engaged in a distinct occupation or business" can be determined based on "JCT's uniform policy prohibiting Drivers from hauling for other carriers, and JCT's complete control over load assignments and Drivers' delivery services." [*Id.*]. JCT disagrees because "[s]ome declarants had extensive experience operating their own trucking business." [Doc. 201, p. 39]. In addition, JCT cites to *Narayan v. EGL, Inc.*, 285 F.R.D. 473 (N.D. Cal. 2012). The court in *Narayan* denied class certification despite finding the defendant trucking company had "standardized many if not all aspects of its relationship with drivers." *Id.* at 480. There, the court was primarily concerned with 127 of the 396 putative class members who had hired "sub-drivers." *Id.* at 478. In addition, some of the putative class members had transitioned to "owner only" roles, meaning that only their sub-drivers continued to perform services for the defendants, and only some of the putative class members drove exclusively for the defendant company. *Id.* The court found these differences were relevant to the "distinct occupation or business" *Borello* factor. *Id.* "[T]here appears to be room in the 'distinct business' inquiry to consider the differences in the class members' operations, such as whether they hired sub-drivers and whether they contracted with other companies." *Id.* at 479. The court determined such differences necessitated individual inquiries and, as a result, common questions did not predominate. *Id.* at 480. Here, however, the California Work Class does not include "owner only" lease-holders. "Plaintiff now

moves to certify three class of *Drivers*." [Doc. 162, p. 10; *see also id.*, p. 11, n. 2 (the Classes will only seek relief "to the extent [they] *performed delivery services* and related activities within California's borders."). Further, the California Classes only include those who "lease a truck from JCT, and then lease the truck back to JCT for its *exclusive* use." [Doc. 162, p. 10]. While the class definition encompasses some drivers who hire team drivers to assist them, this variation does not defeat predominance. If JCT is ultimately found liable under California law, the class members who have hired team drivers will only be able to seek damages for the work they performed in California, *i.e.* to the extent the class member himself or herself drove a truck operated pursuant to a uniform ICOA and Lease Agreement. Team drivers who have not entered into a Lease Agreement with Three Diamond, LLC or JCT and an ICOA with JCT are excluded from class membership.[7] As with the *Martinez*-ABC test, the *Borello* test involves common questions.

In addition, several other secondary factors are susceptible to common proof: the skill required to perform delivery services, whether performing delivery services is part of JCT's regular business, and method of payment for class members. *See Johnson*, 2018 WL 3646540, at *10 (Certain "secondary *Borello* factors can also be resolved through common proof."). Variations in other factors, like the length of time for performance, do not defeat certification.

The crux of this case is whether JCT has misclassified the putative class members as "independent contractors." Both misclassification tests under California law involve questions common to the entire California Work Class. These questions drive this litigation—to the extent JCT is subject to California wage and hour law—and will generate common answers that will determine liability in a single stroke. *Menocal*, 882 F.3d at 923; *see In re FedEx*, 273 F.R.D. at

---

[7] To avoid any confusion, the court will modify the class definitions to include Huddleston's limitation to work performed in California.

458-59 ("As the court understands the law that will govern the California plaintiffs' state law claims, whether a driver is an employee or an independent contractor will turn on [defendant's] right to control that driver, not on whether [defendant] fully exercised that control.  Given the ubiquity of the [agreements, defendant's] right to control its drivers is a common question that predominates over all other questions with respect to the California claims.").  The predominance requirement is satisfied.  However, out of an abundance of caution, the court will consider whether individual inquiries in the underlying substantive claims necessitate a different result.

c.      *Plaintiff's Second, Fourth, and Seventh Causes of Action*

JCT argues Huddleston's Second (failure to pay minimum wage), Fourth (failure to authorize meal and rest breaks), and Seventh (failure to provide itemized wage statements) causes of action are subject to the *Martinez*-ABC test. [Doc. 201, p. 37, n. 14].[8]  Huddleston reasons that "once misclassification is established, Plaintiff has shown that common issues predominate the underlying wage and hour claims." [Doc. 205, p. 9].  Any individualized inquiries, in Huddleston's view, are equivalent to damages calculations which do not defeat certification.  The court agrees.

*Minimum Wage.*   Huddleston argues that JCT's piece-rate formula "that does not compensate directly for all time worked does not comply with California Labor Codes."  [Doc. 162, p. 42 (quoting *Cardenas v. McLane Foodservices, Inc.*, 796 F. Supp. 2d 1246, 1252 (C.D. Cal. 2011))].  Accordingly, "[u]pon a finding of misclassification, the only remaining inquiry is the *amount* of minimum wage damages to be paid to the Class."  [*Id.* (emphasis in original)].  JCT responds that "California law permits piece-rate payments to encompass all activities 'directly related' to the load." [Doc. 201, p. 46 (citing Cal. Lab. Code § 226.2)].  Accordingly, "Huddleston

---

[8] The court assumes JCT is correct for the purposes of certification.  The court need not determine which misclassification test applies to each substantive claim at this stage because it would not affect the analysis.

must show (1) a particular activity was *not* directly related to the load; (2) JCT failed to pay for it in some other way; and (3) Huddleston did not otherwise earn minimum wage in that hour."  [*Id.*].

For purposes of assessing predominance, it is unnecessary for the court to determine whether JCT's payment plan encompassed all activities directly related to the load.  It need only determine that the same policies bearing on this question were applied to all proposed class members.  *See Moreno*, 2019 WL 3858999, at *14.  Further, courts have rejected arguments that determining liability for minimum wage claims when employers use "piece-rate" systems requires "an individualized, hour by hour inquiry."  *Amaro v. Gerawan Farming, Inc.*, No. 1:14-cv-00147-DAD-SAB, 2016 WL 3924400, at *15 (E.D. Cal. May 20, 2016) (citing *Tokoshima v. The Pep Boys*, No. C-12-4810-CRB, 2014 WL 1677979, at *7 (N.D. Cal. Apr. 28, 2014)).  JCT does not dispute that it applies its piece-rate system to all drivers.  [Doc. 162, p. 16; *see also* Doc. 201, p. 46].  "Because of the universal nature of this practice, the court finds that individual injury resulting from the alleged violation is capable of proof at trial through evidence that is common to the class.  Any individual issues that do exist go only to the issue of damages.  Thus, predominance is satisfied."  *Amaro*, 2016 WL 3924400, at *15.

*Meal and Rest Breaks.*  Huddleston contends his meal and rest break claims should be certified because "JCT has no policies to provide meal or rest breaks in compliance with California law to its drivers."  [Doc. 162, p. 43].  JCT responds that its "policy that allows the [drivers] to take a 30-minute, duty free break at any time, including within the first five hours of work, complies with California law."  [Doc. 201, p. 44].  Moreover, JCT argues there is no evidence "that JCT uniformly prevented the [drivers] from taking breaks."  [*Id.*].  JCT may be correct that its policies comply with California law and that it did not impede proposed class members' ability

to take breaks.[9]  These are questions that can be resolved on a class wide basis.  *See Moreno*, 2019 WL 3858999, at *15-16 (uniform meal and rest break policies support class certification).  The court finds common questions exist with respect to Huddleston's meal and rest break claim.

*Itemized Wage Statements.*  Huddleston argues his itemized wage statement claim is "derivative" of his other claims.  [Doc. 162, p. 44].  "A finding of liability for any predicate claim necessarily results in a finding of liability for these derivative claims."  [*Id.*].  JCT argues the court "cannot assume that it will be able to resolve these claims on a classwide basis."  [Doc. 201, p. 42].  Huddleston alleges that "Plaintiff and putative Class and Collective members do not receive accurate, itemized wage statements reflecting the hours they work and the amount of wages [to which] they are entitled and for which they should be compensated."  [Doc. 1, p. 3, ¶ 7].  Under § 226 of the California Labor Code, an employer is required to provide "an accurate itemized wage statement" showing gross wages, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate, among other things.  Cal. Lab. Code § 226(a).  "The employer's violation of section 226 must be knowing and intentional."  *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1131 (E.D. Cal. 2015).  Other courts have certified classes based on similar claims.  "Common questions will . . . predominate with respect to the Plaintiff's claim that [the employer] failed to provide accurate wage statements.  The wage statements follow a uniform format and [the employer's] knowledge of any inaccuracies in its wage statements can be determined on a class-wide basis."  *Bernstein v.*

---

[9] JCT, in a footnote, argues "[t]he Court arguably lacks jurisdiction to hear the [meal and rest breaks] claim."  [Doc. 201, p. 43 n. 15].  Per this court's local rules, "[a] response to a motion may not also include a motion or a cross-motion made by the responding party."  LCvR 7.2(e).  Accordingly, JCT has not adequately raised its jurisdictional concerns regarding the meal and rest break claim.  Similarly, JCT has not adequately raised its broader concerns regarding declarations submitted by Huddleston in support of class certification.  [Doc. 201, p. 25 n. 3; pp. 49-50 n. 20].

*Virgin America, Inc.*, No. 15-cv-02277-JST, 2016 WL 6576621, at \*13 (N.D. Cal. Nov. 7, 2016), class decertified in part by *Bernstein v. Virgin America, Inc.*, No. 15-cv-02277-JST, 2018 WL 3349135 (N.D. Cal. July 9, 2018).  The court therefore finds common questions exist with respect to Huddleston's wage statement claim.

d.      *Plaintiff's Third, Fifth, Sixth, Tenth, and Eleventh Causes of Action*

JCT argues Huddleston's Third (failure to pay all hours worked), Fifth (failure to reimburse expenses), Sixth (failure to maintain proper payroll records), Tenth (waiting time penalties), and Eleventh (unlawful business practices) causes of action are subject to the *Borello* test. [Doc. 201, p. 37, n. 13].  As with Huddleston's *Martinez*-ABC claims, Huddleston argues common questions predominate the substantive *Borello* claims because a finding of misclassification automatically establishes liability for the underlying substantive claims. [Doc. 162, p. 41].

JCT argues that the court "cannot assume that it will be able to resolve these claims on a class wide basis."  [Doc. 201, p. 42].  Specifically, JCT argues Huddleston's expense reimbursement claim cannot be certified for class wide adjudication.  [*Id.*].  Huddleston alleges JCT fails to reimburse drivers, and "regularly requires Plaintiff and putative Class members to pay out of pocket[,] for gasoline and vehicle maintenance[,] . . . for occupations accident insurance, physical damage insurance, Bob-tail insurance, commercial liability insurance, and a performance bond." [Doc. 1, pp. 20-21, ¶¶ 102, 104].  "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  Cal. Labor Code. § 2802(a).

JCT acknowledges that "JCT had certain policies on expense reimbursement," but argues that Huddleston "must demonstrate that each class member incurred an expense that was necessary and reasonable as a direct consequence of the discharge of his or her duties."  [Doc. 201, p. 42].

When a hiring entity has uniform expense requirements, "[w]hether each of [the expense] categories was a necessary expense is subject to common proof." *Johnson*, 2018 WL 3646540, at *14.  Further, "[w]hether class members incurred a particular expense at a particular time is a question of damages not liability." *Id.*  The court can determine what expenses the California Work Class members were required to incur without reimbursement under the uniform agreements and policies and determine whether those expenses are "necessary and reasonable as a direct consequent of the discharge of [class members'] duties" at a class wide level.

JCT also contends Huddleston cannot show which expenses class members incurred in California.  [Doc. 201, p. 42].  Huddleston argues that "satellite technology pings the trucks every 15 minutes, showing their location, and . . . this information can be used to see when a Driver is driving in California, and for how long . . . *just* within the State of California, and how much time a Driver spent in California in a given month."  [Doc. 205, p. 10, n. 18].  This information can be "used to prorate . . . uniform expenses based on the time the trucks were running in California."  [*Id.*, p. 13].  Such an inquiry is akin to damages calculation which do not defeat certification.  *See Menocal*, 882 F.3d at 922 ("[T]he fact that damages may have to be ascertained on an individual basis is not, standing along, sufficient to defeat class certification." (citation omitted)).[10]

In sum, Huddleston has shown that common questions will predominate the court's merits analysis here.  *See Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir.

---

[10] The parties do not make distinct arguments regarding the certification of the failure to pay all hours worked, failure to maintain proper payroll records, waiting time penalties, and unlawful business practices claims.  These claims are derivative of other claims discussed at length in this opinion.  To the extent individual inquiries arise in the derivative claims, they will not predominate the common question of misclassification.  *See Johnson*, 2018 WL 3646540, at *15 ("If the drivers were employees and not independent contractors—a question the Court has already decided is subject to common proof—the wage statement and waiting time claims are also subject to common proof.").

2019) ("[S]o long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately."). Rule 23(b)(3) is satisfied.

## 2. Superiority

Huddleston must also show that a "class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Menocal*, 882 F.3d at 915 (quoting Fed. R. Civ. P. 23(b)(3)). The superiority requirement is satisfied when a class action would allow for the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* (quoting *Amchem*, 521 U.S. at 617). "Considerations such as class members' limited understanding of the law, limited English skills, or geographic dispersal . . . weigh in favor of class certification." *Id.* (citing William B. Rubenstein, Newberg on Class Actions § 4:65 (5th ed. Dec. 2017 update)). JCT argues the superiority requirement is not satisfied because, "[u]nlike a consumer class action, where each individual plaintiff may only have a claim for a few dollars, Huddleston here is claiming hefty penalties for years of work under fee-shifting statutes. Individuals therefore do have incentives to attract counsel and pursue their own claims if they feel it is in their best interest." [Doc. 201, p. 54].

However, "[w]here as here, all class members' allegations are based on uniform policies and practices giving rise to predominately common questions of fact and law, a class action is superior." *Taylor*, 2015 WL 2358248, at *16. Further, JCT does not dispute that there is no other wage and hour litigation pending against JCT involving the proposed classes. [Doc. 162, p. 48]. While damages calculations here will inevitably involve individual inquiries, the court finds class treatment will "achieve economies of time, effort, expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results." *See CGC Holding*, 773 F.3d at 1096 (quoting *Amchem*, 521 U.S. at 615). Huddleston has satisfied Rule 23 for the California Work Class.

## V.  Certification of the Oklahoma Class

Huddleston also seeks to certify the Oklahoma Class for his claims under Oklahoma law. He alleges JCT's marketing practices violate both the OBOSA and the OCPA.

### A.  Oklahoma Consumer Protection Act

The OCPA "authorizes 'a private of action' whenever a person commits 'any act or practice declared to be a violation of the Consumer Protection Act.'" *Cates v. Integris Health, Inc.*, 412 P.3d 98, 103-04 (Okla. 2018) (quoting 15 Okla. Stat. § 761.1(A)).  Such acts include "commit[ting] an unfair or deceptive trade practice," meaning "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."  15 Okla. Stat. §§ 752(13), 753(20).  There are four elements to an OCPA claim: (1) that the defendant engaged in an unlawful business practice; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.  *Horton v. Bank of America, N.A.*, 189 F. Supp. 3d 1286, 1291 (N.D. Okla. 2016) (citing *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000)).

Huddleston argues JCT's alleged "misrepresentations and omissions are common to the Class and predominate the OCPA claim."  [Doc. 162, p. 46].  He emphasizes "there is uniformity in the documents and representations provided during orientation" containing "the same misrepresentations, e.g. expected miles, fuel consumption, the success of the owner-operator program, and the like."  [Doc. 205, p. 13].  JCT, on the other hand, argues that certification of the OCPA claim should be denied for at least two reasons.  First, JCT argues commonality does not exist because the content of JCT's recruiting efforts varies significantly over time and by

geographic location.  Second, JCT contends that OCPA claims require a finding of reliance which turns on evidence specific to each class member.

In *Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618 (Okla. 2003), the Oklahoma Supreme Court considered whether certification of a class action was appropriate for allegedly false "nationwide representations in DaimlerChrysler's advertising." *Id.* at 626.  The Oklahoma Supreme Court reasoned that "each class member presumably received the representation in their home state, their place of domicile." *Id.* at 627.  Applying Oklahoma's choice-of-law principles, the Court determined the law of each state of reliance, presumably the states of residence, should be applied. *Id.* "Applying the law of 51 jurisdictions to the fraud claim presents an overwhelming burden which would make the class unmanageable and a class action determination of that claim inappropriate." *Id.*  Similarly here, Huddleston cannot certify the Oklahoma Class for claims based on JCT's nationwide advertising.  Doing so would require the court to apply the law of every members' state of residence where they presumably received the alleged misrepresentations.

However, in addition to his advertising claims, Huddleston alleges JCT is liable under the OCPA for misrepresentations made to all Oklahoma Class members at the mandatory orientation in Oklahoma.  These claims are analogous to those in *Weber v. Mobil Oil Corp.*, 243 P.3d 1 (Okla. 2010).  There, the Oklahoma Supreme Court held class certification was appropriate where standardized representations were made and relied upon exclusively in Oklahoma. *Id.* at 7.  The Court determined that, under those circumstances, "application of Oklahoma law to the fraud issue takes precedence" over the class members' states of residence. *Id.*  Similarly here, where the alleged misrepresentations were made and relied upon at the Oklahoma orientation, class certification is appropriate.  *See id.* at 5-6 ("[C]lass certification is appropriate" where "standardized written misrepresentations have been made to class members.").

Common questions exist as to the OCPA claim, including whether JCT's representations at its Oklahoma orientation constitute an unlawful business practice and whether that challenged practice occurred in the course of JCT's business.  JCT argues the court should nonetheless deny certification because the individualized issue of reliance precludes a finding of predominance.

As the Tenth Circuit has recognized, "reliance is often a highly idiosyncratic issue that might require unique evidence from individual plaintiffs" and "present an impediment to the economies of time and scale that encourage class actions as an alternative to traditional litigation." *CGC Holding*, 773 F.3d at 1089.  But, as the Tenth Circuit explains, "that is not always the case." *Id.*

> Sometimes issues of reliance can be disposed of on a classwide basis without individualized attention at trial. For example, where circumstantial evidence of reliance can be found through generalized, classwide proof, then common questions will predominate and class treatment is valuable in order to take advantage of the efficiencies essential to class actions.  Under certain circumstances, therefore, it is beneficial to permit a commonsense inference of reliance applicable to the entire class to answer a predominating question as required by Rule 23.

*Id.* (citations omitted).  Huddleston argues such is the case here.  In support, he relies on *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457 (D. Utah 2017).  In *Roberts*, a trucking case, the court concluded that an inference of reliance was warranted and "rejecte[ed] Defendants' theory that individual evidence of reliance and causation bar[red] class certification." *Id.* at 514.  The court explained:

> Individuals relied on promises of economic opportunity when they enrolled in and paid tuition to attend England's driving schools. More importantly, the putative class agreed to become independent contractors, operating under the assumption that the Driving Opportunity offered a feasible career choice. . . . [M]embers of the class had been exposed, through a variety of mediums, to generally uniform representations that may have been inaccurate. And the record before the court is sufficient to support the conclusion that these representations were part of a concerted effort to recruit

individuals to England's independent contractor program and convince drivers to lease from Horizon. At least for the proposed class, common sense dictates that each class member's reason for attending driving school and joining the independent contractor program was the belief that Defendants offered an income and mileage opportunity that would support a career. There is an obvious link between the alleged misconduct and harm. For this reason, the court concludes that Plaintiffs are entitled to an inference for the purposes of its Rule 23(b) analysis.

*Id.* (footnotes and internal quotation marks omitted).   Similarly here, Huddleston alleges that Oklahoma Class members relied on uniform misrepresentations and omissions of material fact "regarding the income Drivers would earn, the miles they would drive, and the nature of the economic opportunity JCT was offering to them."   [Doc. 1, p. 4, ¶ 11].   For the purposes of Huddleston's class certification motion alone, "common sense dictates that each class member's reason" for entering into an ICOA and Lease Agreement with JCT "was the belief that [JCT] offered an income and mileage opportunity that would support a career."   *See Roberts*, 318 F.R.D. at 514.   As in *Roberts*, an inference of reliance is appropriate here.

Common questions predominate the OCPA claim as to uniform representations made and relied upon in Oklahoma.   In addition, as JCT does not contest, Huddleston's OCPA claim is typical of the claim of the Oklahoma Class.   *See D.G.*, 594 F.3d at 1198.   Rule 23 is satisfied as to the Oklahoma Class members' OCPA claim for alleged representations made and relied upon in Oklahoma.[11]

### B.   Oklahoma Business Opportunity Sales Act

The OBOSA "outlaws the use of fraudulent or deceitful information 'in connection with the offer or sale of any business opportunity.'"   *Sonic Industries LLC v. Halleran*, No. CIV-16-709-C, 2017 WL 239388, at *5 (W.D. Okla. Jan. 19. 2017) (quoting 71 Okla. Stat. § 819).

---

[11] Moreover, superiority is satisfied for the reasons articulated in Section IV.D.2., *infra*.

Huddleston argues several common questions exist as to the OBOSA claim: (1) whether the lease opportunity constitutes a "business opportunity"; (2) whether class members are "purchasers," covered by the OBOSA; (3) whether JCT is a "seller," subject to the OBOSA; and (4) whether JCT complied with the requirements of the OBOSA. [Doc. 162, p. 47]. JCT argues, as it did with respect to the OCPA claim, that the "inference of reliance" is inappropriate here. [Doc. 201, p. 50]. For the reasons stated above, this argument fails for purposes of Huddleston's class certification motion. *See* Section V(A), *infra*. Second, JCT argues, "Huddleston has failed to identify any element of the claim that can be proven through common, class-wide evidence." [*Id.*, p. 51]. The court disagrees—Huddleston has identified at least four common questions with respect to his OBOSA claim. Third, JCT argues "this claim is predominated by two issues that require individualized evidence to adjudicate liability." [*Id.*].

The first issue is whether the "business opportunity" exception for "any offer or sale of a business opportunity to an on-going business where the seller will provide . . . services which are substantially similar to the . . . services sold by the purchaser in connection with the purchaser's on-going business" applies. *See* 71 Okla. Stat. § 802(3)(b)(2). JCT argues that "any putative class member who operated as an owner-operator with their own truck (including leased trucks) before they contracted with JCT would not have a claim under the statute." [Doc. 201, p. 51]. Huddleston contends the exception would not apply because "[t]o the extent a Driver worked for another company before working for JCT, that relationship necessarily ended, and cannot constitute an on-going business." [Doc. 205, p. 16 (internal quotation marks omitted)]. However, the statute provides "business opportunity" does not include "any *offer* . . . of a business opportunity to an on-going business" of a substantially similar nature. 71 Okla. Stat. § 802(3)(b)(2) (emphasis added). Whether class members terminated their prior business upon acceptance is not

determinative; the question is whether class members were engaged in an "on-going business" at the time JCT made its offer.  As JCT points out, "[s]everal contractors fit that description."  [Doc. 201, p. 51].  Accordingly, individual issues exist with respect to whether the lease opportunity constitutes a "business opportunity" under Oklahoma law.  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013) ("What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of litigation." (alterations and citation omitted)).

Under these circumstances, there will be issues of fact regarding JCT's liability on the OBOSA claim unique to each class member.  Specifically, the nature of each class members' work activity at the time of JCT's offer to join the leasing program will be at issue.  While common questions exist, the threshold inquiry of whether JCT's leasing program constitutes a "business opportunity" predominates.  *See Armstrong v. Powell*, 230 F.R.D. 661, 681 (W.D. Okla. 2005) ("Several of the class representatives have defenses unique to them, which, if successful, could entirely bar their claims.  The presence of these defenses causes the Court to question whether the class claims are truly predominate."). Huddleston's motion to certify the Oklahoma Class is denied as to the OBOSA claim (Count 12).

## VI.  Class Period and Schedule

JCT "disputes that the class period should begin on April 13, 2013" because the Complaint was filed on July 12, 2017.  [Doc. 201, p. 17 n.1].  "JCT requests permission to brief the applicable class period before notices are sent."  [*Id.*].  The parties have not sufficiently briefed this issue.  Accordingly, the parties are each directed to brief the issue in no more than five pages within fourteen days of the date of this opinion and order.

Further, in a footnote, Huddleston "proposes a bifurcated trial plan." [Doc. 162, p. 49 n. 164]. The parties are directed to meet and confer in order to file a proposed pre-trial schedule within twenty-one days of the date of this opinion and order.

## VII.  Conclusion

WHEREFORE, Plaintiff's Motion for Class Certification [Doc. 162] is granted as to the following California Work Class with respect to Huddleston's California law claims:

> All current and former individuals, to the extent they performed transportation services for John Christner Trucking, LLC within California, who (1) entered into an Independent Contractor Operator Agreement with JCT, (2) entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC, and (3) were classified as independent contractors.

Plaintiff's motion is granted as to the following Oklahoma Class as to Huddleston's OCPA claim for representations made and relied upon in Oklahoma:

> All current and former individuals who provide transportation services for John Christner Trucking, LLC within the United States, who (1) entered into an Independent Contractor Operator Agreement with JCT, and (2) entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC.

The court will narrow the classes as to the appropriate time frame upon review of the parties' forthcoming briefing. The motion is denied as to the California Resident Class and the Oklahoma Class as to the OBOSA claim.

FURTHERMORE, the parties are directed to brief the class period in no more than five pages within fourteen days of the date of this opinion and order.

FURTHERMORE, the parties shall meet and confer, and, no later than twenty-one from the date of this order, submit to the court a proposed pre-trial schedule.

IT IS SO ORDERED this 30th day of January, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE