## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS HUDDLESTON, individually and on behalf of all others similarly situated, | Case No. 4:17-cv-00549-GKF-FHM |
| Plaintiff, | |
| v. | |
| JOHN CHRISTNER TRUCKING, LLC, | |
| Defendant. | |

### PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

COMES NOW, Plaintiff Thomas Huddleston ("Plaintiff"), by and through his undersigned counsel, moves this Court for an Order:

1.     Granting final approval of the Parties' Joint Stipulation of Settlement and Release of Class and Collective Action ("Settlement"), a true and correct copy of which is attached as Exhibit A to the Declaration of Carolyn H. Cottrell in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement (ECF 271-1);

2.     For settlement purposes, finally certifying the state law claims as a Fed. R. Civ. P. 23 class on behalf of the Settlement Class;

3.     Finally approving Plaintiff Thomas Huddleston as Representative of the Classes and as the Collective Representative of the FLSA Collective for purposes of the Settlement;

4.     Finally approving Schneider Wallace Cottrell Konecky LLP and the Law Offices of Robert S. Boulter as Class Counsel for the Classes and the FLSA Collective;

5.     Finally approving Settlement Services, Inc. as Settlement Administrator and finally approving the costs of the claims administration;

6.      Finally approving Class Counsel's request for attorneys' fees and costs;

7.      Finally approving Plaintiff Thomas Huddleston's request for an incentive award; and

8.      Approving the proposed schedule and procedure for completing the final approval process as set forth in the Settlement.

Plaintiff brings this Motion pursuant to Fed. R. Civ. P. 23(e). This Motion is based on the accompanying Memorandum of Law, the concurrently filed Motion for Attorneys' Fees and Costs and Service Award and accompanying declarations and exhibits, and all other records, pleadings, and papers on file in this action. Pursuant to the terms of the Settlement Agreement and to the Parties' stipulation, ECF 273, ¶ 10, Defendant does not oppose this Motion.

A Proposed Order is submitted for the Court's consideration.

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................ 1

    A.  Procedural Background......................................................................................... 1

        1.  Preliminary Approval of the Settlement and Subsequent
            Notice. ..................................................................................................... 2

        2.  CAFA Notice and PAGA Notice Requirements Have
            Been Satisfied. ........................................................................................ 3

    B.  Key Terms Of The Settlement .............................................................................. 3

III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE
     SETTLEMENT ............................................................................................................ 6

    A.  The Court Should Grant Final Approval of the Settlement as
        to the California and Oklahoma Classes. ............................................................. 6

        1.  The Proposed Settlement is Fair, Reasonable, and
            Adequate, and Should be Finally Approved. ............................................. 7

            a.  The Settlement is the product of extensive arm's
                -length negotiations between experienced counsel
                and assisted by an experienced Circuit Court mediator.................. 8

            b.  Serious questions of law and fact exist and the
                value of an immediate recovery outweighs the mere
                possibility of future relief after protracted and
                expensive litigation. ...................................................................... 9

            c.  The Parties agree that the Settlement is fair and
                reasonable, further supporting final approval. ............................. 12

        2.  Near Identical Definitions of the Proposed Classes Have
            Already Been Certified, and Should Continue to Be
            Certified Here for Settlement Purposes. ................................................ 16

        3.  The Notice Provisions Were Followed and Provided
            Adequate Notice to the Class That Satisfies Due Process. ...................... 16

i

B.    The Court Should Finally Approve the Settlement as to the FLSA Collective. ................................................................................. 18

C.    The Court Should Finally Approve the Settlement under the PAGA. ................................................................................................ 18

D.    The Request for Attorneys' Fees, Costs, and an Incentive Award Should Be Approved. ............................................................... 20

E.    The Court Should Approve the Proposed Implementation Schedule. ................................................................................................ 21

IV.    CONCLUSION ...................................................................................... 22

CERTIFICATE OF SERVICE ......................................................................... 24

# TABLE OF AUTHORITIES

*Amoco Prod. Co. v. Fed. Power Comm'n*,
    465 F.2d 1350 (10th Cir. 1972) ................................................................ 6

*Arias v. Superior Court,*
    46 Cal.4th 969 (2009) ............................................................................ 18

*Armstrong v. Bd. of Sch. Dirs.*,
    616 F.2d 305 (7th Cir. 1980) ............................................................... 6, 7

*Ashley v. Reg'l Transp. Dist.*,
    No. 05-cv-01567-WYD-BNB,
    2008 U.S. Dist. LEXIS 13069 (D. Colo. 2008) ............................ 8, 9, 11

*Baumann v. Chase Inv. Servs. Corp.*,
    747 F.3d 1117 (9th Cir. 2014) ............................................................... 18

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
    167 F.Supp.2d 1216 (D. Colo. 2001) ...................................................... 6

*Childs v. Unified Life Ins. Co.*,
    No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818,
    (N.D. Okla. Dec. 2, 2011) ...................................................................... 12

*Cotter v. Lyft, Inc.,*
    176 F.Supp.3d 930 (N.D. Cal. 2016) ..................................................... 19

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ...................................................................... 8

*Gonzales v. CoreCivic of Tennessee, LLC,*
    No. 1:16-cv-01891-DAD-JLT, 2018 U.S. Dist. LEXIS 156549,
    2018 WL 4388425, (E.D. Cal. Sept. 13, 2018) ...................................... 20

*Gottlieb v. Wiles*,
    11 F.3d 1004 (10th Cir. 1993) ............................................................... 11

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ................................................................. 17

*Gundrum v. Cleveland Integrity Servs.*,
    No. 17-CV-55-TCK-tlw, 2017 U.S. Dist. LEXIS 130255,
    (N.D. Okla. Aug. 16, 2017) ........................................................................ 7

*Horton v. Molina Healthcare, Inc.*,
    No. 17-cv-0266-CVE-JFJ, 2019 U.S. Dist. LEXIS 90377,
    (N.D. Okla. May 22, 2019) ......................................................................... 9

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*,
    127 F.Supp.2d (S.D.N.Y. 2001) ................................................................ 13

*In Re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .................................................................... 19

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,*
    2006 U.S. Dist. LEXIS 71039 (D. Colo. 2006) ....................................... 11

*In re Sprint Corp. ERISA Litig.*,
    443 F.Supp.2d 1249 (D. Kan. 2006) ........................................................ 16

*Johnson v. City of Tulsa,*
    No. 94-CV-39-H(M), 2003 U.S. Dist. LEXIS 26379 (N.D. Okla. 2003) ................................ 12

*Jones v. Nuclear Pharm., Inc.*,
    741 F.2d 322 (10th Cir. 1984) .................................................................... 7

*Jordan v. NCI Group,*
    No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297,
    (C.D. Cal. Jan. 5, 2018) ........................................................................... 18

*Langford v. Devitt,*
    127 F.R.D. 41 (S.D.N.Y. 1989) ................................................................ 17

*Law v. NCAA,*
    108 F.Supp.2d 1193 ................................................................................. 13

*Lopez v. Santa Fe,*
    206 F.R.D. 285 (D.N.M. 2002) ................................................................ 16

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ................................................. 8, 12, 13, 17

ii

*Lucas v. Kmart Corp.*,
 No. 99-cv-01923-JLK, 2006 U.S. Dist. LEXIS 51439,
 (D. Colo. July 27, 2006) ................................................................................ 13

*Lynn's Food Stores. Inc. v. U.S.*,
 679 F.2d 1350 (11th Cir. 1982) .................................................................... 18

*Marcus v. Kan. Dept. of Revenue*,
 209 F.Supp.2d 1179 (D. Kan. 2002) ........................................................ 9, 12

*Maywalt v. Parker & Parsley Petroleum Co.*,
 92 Civ. 1152 (RWS), 1997 U.S. Dist. LEXIS 97, (S.D.N.Y. 1997) ............. 13

*McNeely v. Nat'l Mobile Health Care, LLC*,
 No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741,
 (W.D. Okla. 2008) ......................................................................................... 11

*Millsap v. McDonnell Douglas Corp.*,
 No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223,
 (N.D. Okla. 2003) .......................................................................................... 11

*Moniz v. Adecco USA, Inc.*,
 72 Cal.App.5th 56 (2021) .............................................................................. 18

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*,
 No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268,
 (N.D. Cal. May 5, 2021) ................................................................................ 20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950) ...................................................................................... 16

*Newton v. Fortis Ins. Co.*,
 No. 04-cv-1650-PSF-OES, 2006 U.S. Dist. LEXIS 33965,
 (D. Colo. 2006) .............................................................................................. 13

*O'Connor v. Uber Technologies, Inc.*,
 201 F.Supp.3d 1110  (N.D. Cal. 2016) ......................................................... 19

*Pliego v. Los Arcos Mexican Rests., Inc.*,
 313 F.R.D. 117 (D. Colo. 2016) .................................................................... 18

*Ramirez v. Benito Valley Farms, LLC*,
 No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272,
 (N.D. Cal. Aug. 25, 2017) .............................................................................. 18

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002), *cert. denied*, 539 U.S. 915 (2003)...................................... 7, 8

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
  749 F.2d 1451 (10th Cir. 1984) ............................................................................. 6

*Smith v. Lux Retail N. Am., Inc.*,
  No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562,
  (N.D. Cal. June 13, 2013) ................................................................................... 15

*Smith v. Rae Venter Law Group*,
  29 Cal.4th 345 (2002) ................................................................................... 15, 20

*Sollenbarger v. Mountain States Tel. and Tel. Co.*,
  121 F.R.D. 417 (D.N.M. 1988)............................................................................ 17

*Tripp v. Rabin*,
  No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691,
  2016 WL 3615572 ............................................................................................. 7

*Trujillo v. Colo.*,
  649 F.2d 823 (10th Cir. 1981) ............................................................................... 6

*Tuten v. United Airlines, Inc.*,
  41 F.Supp.3d 1003 (D. Colo. May 19, 2014) ............................................................ 6

*Vargas v. Central Freight Lines*,
  No. 16-cv-00507-JLB, 2017 WL 4271893 (S.D. Cal. Sept. 25, 2017) .................................. 18

*Vaszlavik v. Storage Tech. Corp.*,
  No. 95-B-2525, 2000 U.S. Dist. LEXIS 21129 (D. Colo. 2000)......................................... 7

*Viking River Cruises, Inc. v. Moriana*,
  142 S. Ct. 1906 (2022)...................................................................................... 10

*Wesson v. Staples the Off. Superstore, LLC*,
  68 Cal.App.5th 746, Cal. Rptr. 3d 846, (2021),
  *reh'g denied* (Sept. 27, 2021), *rev'w denied* (Dec. 22, 2021) ................................... 10

*Wilkerson v. Martin Marietta Corp.*,
  171 F.R.D. 273 (D. Colo. 1997) ...................................................................... 7, 9, 11

## STATUTES

28 U.S.C. § 1715, *et seq.* ........................................................................................................ 3

29 U.S.C. § 206 .......................................................................................................... 5, 13, 15, 18

29 U.S.C. § 216 .................................................................................................................... 4

29 U.S.C. § 260 .................................................................................................................. 15

Cal. Civ. Code § 1542 ............................................................................................................ 5

Cal. Lab. Code § 1194 .......................................................................................................... 20

Cal. Lab. Code § 203 ............................................................................................................ 15

Cal. Lab. Code § 2699(e)(2) .................................................................................................. 20

Cal. Lab. Code § 2699(h) ...................................................................................................... 20

Cal. Lab. Code § 2699(l)(2) ............................................................................................... 3, 18

Cal. Lab. Code § 2699(l)(3) .................................................................................................... 3

Cal. Lab. Code § 510 ............................................................................................................ 20

Cal. Lab. Code § 558 ............................................................................................................ 20

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................... 17

Fed. R. Civ. P. 23(e) .......................................................................................................... 6, 7

Fed. R. Civ. P. 23(f) ............................................................................................................ 10

## TREATISES

Manual for Complex Litigation (Third) ............................................................................... 8, 17

Newberg on Class Actions ..................................................................................................... 17

## REGULATIONS

8 C.C.R. 13520 .................................................................................................................... 15

## I.    <u>INTRODUCTION</u>

After over five years of intensive litigation, including extensive discovery and motion practice culminating in certified classes, a cross-appeal that was substantially briefed before the Tenth Circuit, and extensive arm's-length negotiations between counsel, the Parties reached a global settlement of this Action, memorialized in the Joint Stipulation of Settlement and Release of Class and Collective Action ("Settlement").[1] The Settlement has been preliminarily approved, and Plaintiff now seeks final approval of the Settlement.

The Settlement seeks to resolve Plaintiff's class, collective, and representative action claims under federal and California wage and hour laws, as well as Oklahoma consumer protection laws on behalf of 6,585 current and former truck Drivers hauling products throughout the United States, including in California and Oklahoma, for Defendant John Christner Trucking, LLC ("JCT").  The Settlement provides a total non-reversionary settlement amount of $9,250,000, in addition to equitable relief that would release Drivers' monetary debts to JCT. With this Settlement, the Parties are resolving claims unlikely to have been prosecuted as individual actions.

The Settlement is the result of well-informed and months' long, arm's length negotiations between and among experienced and knowledgeable counsel, facilitated by a Circuit Court Mediator.  The Settlement provides an excellent benefit to the Classes and an efficient outcome in the face of expanding and highly risky litigation. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiff respectfully requests that the Court finally approve the Settlement.

## II.    <u>BACKGROUND</u>

### A.    **Procedural Background.**

Plaintiff incorporates by reference the Summary of Work Performed, as set forth in his Memorandum of Law in Support of Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, and an Incentive Award, which will be concurrently filed with this Motion. ECF 281, at Section II, at

---

[1] The Settlement is attached as **Exhibit A** to the accompanying Declaration of Carolyn H. Cottrell in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement. ECF 271-1.

3-9; *see also*, ECF 281-1, Declaration of Carolyn H. Cottrell in Support of Plaintiff's Unopposed Motions for Final Approval of Class and Collective Action Settlement and for Attorneys' Fees and Costs and Service Award ("Cottrell Decl."); ECF 269, Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, at 1-7.

### 1.    Preliminary Approval of the Settlement and Subsequent Notice.

On June 21, 2022, this Court granted preliminary approval of the Settlement. ECF 270. Following the Court's preliminary approval order, the Court-appointed settlement administrator, Settlement Services, Inc. ("SSI") began notice administration pursuant to the order and the Settlement. *See id.*; Settlement, ¶¶ I.8, I.37, III.2, III.4, VI.1-2. On July 19, 2022, JCT provided SSI with a mailing list (the "Class List") containing Class Members' names, las known addresses, last known telephone numbers, and social security numbers. Notice Declaration of Aisha Lange ("Lange Decl."), ¶ 3. The Class List contained data for a total of 6,586 Class Members, including Plaintiff. *Id.*

SSI ran the Class List though the U.S. Postal Service's National Change of Address database. *Id.*, ¶ 4. SSI hosted a settlement website which included information regarding the Settlement, an online change of address request option, and electronic copies of relevant documents filed in support of approval of the Settlement. *Id.*, ¶ 6. SSI further hosted a toll-free number to take Class Member inquiries about the Notice of Settlement. *Id.*, ¶ 7. On July 26, 2022, both the settlement website and toll-free number were "live." *Id.*, ¶¶ 6-7.

That same day, a total of 6,586 Notices of Settlement were mailed to Class Members, of which 1,644 were returned as undeliverable. *Id.*, ¶ 5, Ex. A (generic form of mailed Notice of Settlement). These undeliverable notices were skip traced and sent to 1,401 updated addresses, of which 203 were returned undeliverable. *Id.*, ¶ 8. A total of 446 notices remained undeliverable after skip tracing efforts. *Id.*

Notices of Settlement included SSI's calculations of estimated settlement awards from the Net Settlement Amount based on the Gross Settlement Amount of $9,250,000 less: settlement administration costs of $79,500, attorneys' fees of $3,083,025, attorneys' costs of $150,000, a PAGA payment to the state of California of $75,000, and an incentive award payment to the

Plaintiff of $25,000, which would all need to be approved by this Court. *See id.,* ¶¶ 14-15.  Based on these estimates, SSI calculated individual settlement awards to average approximately $886 per Class Member, with a maximum of approximately $13,191. *See id.*, ¶ 15.[2]

The deadline for Class Members to opt-out, object, or dispute their workweeks was September 24, 2022. *See id.*, ¶¶ 11-13. To-date, two class members have disputed their workweeks, resolving in favor of JCT's records. *Id.,* ¶ 13. Only one opt-out request was submitted. *Id.,* ¶ 11. **Zero** objections were submitted. *Id.,* ¶ 12.

## 2.    CAFA Notice and PAGA Notice Requirements Have Been Satisfied.

JCT complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.* ("CAFA"), which requires that "appropriate state and federal officials" be notified of a pending class action settlement in federal court. On June 29, 2022, JCT served notice pursuant to CAFA to the United States Attorney General and the Attorneys General in the states in which Class Members resided as of the date of the CAFA notice. *See* ECF 275, ¶¶ 2-4.

Plaintiff also complied with the notice requirements of the Private Attorneys General Act of 2004 ("PAGA"). *See* Cal. Lab. Code § 2699(l)(2).  On June 22, 2022, the proposed Settlement was submitted to the California Workforce Development Agency. *See* Cottrell Decl., ¶¶ 47-48. Plaintiff further submitted the Court's order granting preliminary approval to the LWDA, and intends to submit this court's judgment, should one be granted, to the LWDA within 10 days of such judgment or order.  *Id.*; *see also,* Cal. Lab. Code § 2699(l)(3).

## B.    Key Terms Of The Settlement

Under the Settlement, JCT will pay a non-reversionary Gross Settlement Amount of $9,250,000 to resolve this litigation. Settlement, ¶¶ I.20, III.1. This amount includes all payments to the Class Members;[3] proposed attorneys' fees and costs; proposed service award; the costs of

---

[2] Given Class Counsel's requested actual attorneys' costs ($72,843.19) is less than the amount allotted by the Settlement (up to $150,000), Class Counsel has since recalculated the estimated average individual settlement award to be approximately $895 each. *See* Cottrell Decl., ¶ 27.

[3] The California Class, Oklahoma Class, and FLSA Collective Members, are collectively referred to as Class Members.

settlement administration (estimated at $79,500, Lange Decl., ¶ 16); the payment to the California Labor and Workforce Development Agency ("LWDA") under the California Private Attorneys General Act ("PAGA"); and any other obligation of JCT under this Settlement. *See* Settlement, ¶ III.1. Class Members were not required to submit a claim form to receive Settlement payment, and instead, were provided 60 days from mailing of the Notice of Settlement to request exclusion (i.e., opt-out) or object to the Settlement.  Settlement, ¶¶ VI.3-4. Class Members who do not submit a timely opt-out request would be considered Class Participants. *Id.,* ¶ I.9.

The Net Settlement Amount, the amount distributed to Class Participants, is approximately $5,889,631.81.[4] Cottrell Decl., ¶ 27; *see* Settlement, ¶ I.24. This amount is the Gross Settlement Amount less costs of settlement administration, proposed attorneys' fees and costs, proposed service award, and the PAGA payment. Settlement, ¶ I.24.

The entire Gross Settlement Amount will be disbursed pursuant to the terms of the Settlement, and none of it will revert to JCT. *Id*., ¶ I.20.  Other key terms of the Settlement include:

- **California Class**: A portion of the Net Settlement Amount will be distributed to California Class Members, who are defined as "[a]ll current and former individuals, to the extent they performed transportation services for John Christner Trucking, LLC (JCT) within California from April 12, 2013 to the date the Court grants preliminary approval of the settlement (Preliminary Approval Date), who (1) entered into an Independent Contractor Operating Agreement (ICOA) with JCT, (2) entered into a Lease Agreement with either JCT or Three Diamond Leasing, LLC, and (3) were classified as independent contractors" between April 12, 2013, through the Preliminary Approval Date. Settlement, ¶¶ I.5, I.10.

- **Oklahoma Class**: A portion of the Net Settlement Amount will be distributed to Oklahoma Class Members, who are defined as "[a]ll current and former individuals who provide(d) transportation services for JCT within the United States, who (1) entered into an ICOA with JCT, and (2) entered into a Lease Agreement with JCT or Three Diamond Leasing, from April 12, 2014 to the Preliminary Approval Date." *Id.*, ¶ I.5.

- **FLSA Collective Members**: A portion of the Net Settlement Amount will be distributed to 518 individuals who validly[5] submitted written consents to join this Action under 29 U.S.C. § 216(b). Settlement, ¶ I.5, Ex. 1. These individuals are defined as "[a]ll current and former individuals who provided transportation services for JCT within the United States, between May 1, 2015 and the Preliminary Approval Date, who (1) entered into an ICOA

_____

[4] This excludes the $25,000 allocated in PAGA penalties (part of the $100,000 PAGA Payment) which are allocated for distribution to Class Participants. Cottrell Decl., ¶ 27.

[5] There were six invalid opt-in forms submitted in this action, and the Parties have stipulated to strike them from this action. *See* ECF 278, 279.

with JCT, (2) entered into a Lease Agreement with either JCT or Three Diamond Leasing, (3) were classified as independent contractors, and (4) validly opted in to the FLSA collective on or before February 14, 2020 (FLSA Collective Members)." *Id.*, ¶ I.5.

- **PAGA Payment**: There will be a direct monetary distribution to the LWDA and California Class Members under the PAGA. *Id.*, ¶¶ VII.2.d. Pursuant to the PAGA, of the $100,000 total PAGA Payment, $75,000 (75% of the $100,000 allocation) will be paid to the LWDA, the remaining $25,000 (25% of the $100,000 allocation) will be distributed *pro rata* to California Class Members. *See Id.*

- **Class Participants' Released Claims**: Class Participants will release claims under federal law, state law, including California law or Oklahoma law, or local law, limited to those that were or could have been asserted, whether known or unknown, or arising out of or connected to facts, theories, and claims pled in the Complaint, that Class Participants hold or have held before the Effective Date ("Released Claims"). *Id.*, ¶ I.33. In addition to the Released Claims, Plaintiff and the FLSA Collective Members will also release any and all claims, known or unknown, under the FLSA, that were pled or could have been pled based on the factual allegations of the Complaint. *Id.*, ¶ I.33. Upon the Effective Date, all Class Participants will also waive their rights and benefits as to only the Released Claims based on or arising out of the same factual predicates of the Complaint, through the Preliminary Approval Date, Cal. Civ. Code. § 1542. *Id.*, ¶ X.1.

- **JCT's Released Claims**: JCT will release Class Participants who were not under contract with JCT as of June 21, 2022, from **all known and unknown monetary claims**. *Id.*, ¶ X.3.

- **Released Parties**: The Released Claims will apply to the Released Parties, including JCT and its present and former parent companies, subsidiaries, divisions, affiliates, successors, predecessors, related companies, and joint ventures, and each of their present and former officers, directors, shareholders, agents, employees, insurers, attorneys, accountants, auditors, advisors, representatives, consultants, administrators, trustees, general and limited partners, predecessors, successors and assigns. *Id.*, ¶ I.34.

- ***Pro Rata* Distribution**: Each Class Participant will receive a *pro rata* portion of the Net Settlement Amount based on the number of settlement shares they are assigned. *Id.*, ¶¶ VII.2-3. Settlement Shares are based on the number of workweeks the individual worked compared to the total number of workweeks all Class Participants worked. *Id.*, ¶¶ VII.2-3. FLSA Collective Members will receive 1 settlement share per workweek (FLSA Workweeks). *Id.*, ¶ VIII.2.b. To reflect the applicable value of state law claims, Class Participants will receive: 2 settlement shares per workweek for workweeks during which he or she performed any work in California (California Workweeks); and 2 settlement shares per workweek for workweeks during which he or she performed work in the United States (Oklahoma Workweeks). *Id.* The total number of settlement shares for all Class Participants will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. *Id.*, ¶ VII.3.c. That figure will then be multiplied by each Class Participant's number of settlement shares to determine the Class Participant's *pro rata* portion of the Net Settlement Amount. *Id.*

- **Tax Allocation**: The Settlement provides that all individual settlement awards to Class Participants will be reported on an IRS Form 1099. *Id.*, ¶ III.4.

- **Service Award**: The Settlement provides that Plaintiff will seek a service payment to

Named Plaintiff Thomas Huddleston, of $25,000 (subject to Court approval) to compensate him for his time and effort in service of the Classes, as well as in exchange for a general release. *Id*., ¶¶ I.35, III.2, X.2.

- **Attorneys' Fees and Costs**: Class Counsel's attorneys' fees and litigation expenses are included in the Gross Settlement Amount. *Id.*, ¶ IV.1. The Settlement provides that JCT does not oppose a fee application of up 33.33% of the Gross Settlement Amount (i.e., $3,083,025), plus reasonable out-of-pocket costs of up to $150,000, which are estimated at $72,843.19. *See id.*; *see also,* Cottrell Decl., ¶¶ 97, 99-100.

- ***Cy Pres***. Any funds still remaining after the 180-day check cashing period will be redistributed to Class Participants on a prorated basis, and any additional settlement administration costs related to the redistribution will be deducted from the total amount of uncashed funds prior to redistribution. Settlement, ¶ VII.9. Following an additional 180-day check cashing period for the redistributed checks, any remaining funds will be revert to Legal Services Corporation, the Parties' agreed-upon *cy pres* beneficiary. *Id.* The organization bears a substantial nexus to the interests of the Class Members because it is a grant-making organization that provides financial support for civil legal aid to low-income Americans. *See* Cottrell Decl., ¶ 41.

## III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    The Court Should Grant Final Approval of the Settlement as to the California and Oklahoma Classes.

Courts strongly favor settlement as a method for resolving disputes. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *see also Sears v. Atchison, Topeka & Santa Fe Ry., Co*., 749 F.2d 1451, 1455 (10th Cir. 1984); *Trujillo v. Colo*., 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"). This is especially true in complex class actions, as is the case here. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc*., 167 F.Supp.2d 1216, 1229 (D. Colo. 2001). "[The] presumption in favor of voluntary settlement agreements is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc*., 41 F.Supp.3d 1003, 1007 (D. Colo. May 19, 2014); *see also, Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. . . .").

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. Under that Rule, approval of a class action settlement is a two-step process. Fed. R. Civ. P. 23(e).   During the first step, which has already occurred here, the Court

conditionally certified the settlement classes, preliminarily approved the settlement, and authorized that notice be given to the Class so that interested Class Members may object to the fairness of the settlement or opt out of the settlement. *See Gundrum v. Cleveland Integrity Servs.*, No. 17-CV-55-TCK-tlw, 2017 U.S. Dist. LEXIS 130255, at *13 (N.D. Okla. Aug. 16, 2017); *Tripp v. Rabin*, No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, 2016 WL 3615572, at *2 (D. Kan. July 6, 2016). In the second step, after notice has been sent, the court holds a final approval hearing to address any objections and decide whether to grant final approval. *Armstrong,* 616 F.2d at 314.

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *see also Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002), *cert. denied*, 539 U.S. 915 (2003); *see also Vaszlavik v. Storage Tech. Corp.,* Civil Action No. 95-B-2525*,* 2000 U.S. Dist. LEXIS 21129, at *2, *4 (D. Colo. 2000) (citing *Jones v. Nuclear Pharm., Inc*., 741 F.2d 322, 324 (10th Cir. 1984). "Importantly, in evaluating the fairness of the settlement, courts are not to decide the merits of the case or resolve unsettled legal questions." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). "This is because the essence of settlement is compromise, and settlements are generally favored." *Id*.

Plaintiff now asks this Court to take the final step in the review process, and finally approve the California and Oklahoma Classes for settlement approval. Given the complexity of this litigation, the potential and continued risks if the Parties were to proceed with their cross appeals and then to trial, the Settlement represents a favorable resolution of this Action and eliminates the risk that the Classes might otherwise recover nothing. The Settlement is fair, reasonable, and adequate, and thus warrants this Court's final approval.

### 1.     The Proposed Settlement is Fair, Reasonable, and Adequate, and Should be Finally Approved.

The Tenth Circuit has identified four factors to determine whether a settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation

in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d at 1188; *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). As demonstrated below, the Settlement satisfies each of the criteria and thus warrants this Court's final approval.

> **a.    The Settlement is the product of extensive arm's-length negotiations between experienced counsel and assisted by an experienced Circuit Court mediator.**

Where, as here, a settlement results from "arm's length negotiations between experienced counsel after significant discovery [has] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693; *see also* Manual for Complex Litigation (Third) § 30.42, at 238. This action has been litigated for approximately five years. During this time, Class Counsel has conducted substantial discovery, litigated nearly a dozen contested motions, all culminating in certified Classes and a conditionally-certified Collective. Cottrell Decl., ¶¶ 8-24, 49-51. Class Counsel reviewed and analyzed tens of thousands of pages of documents, interviewed countless Drivers, and performed intensive research of the laws applicable to the claims and defenses. *Id.*, ¶¶ 11-12, 50-51.

During the pendency of JCT's appeal and Plaintiff's cross-appeal, the Parties began settlement discussions and negotiations, which were conducted at arm's length and with the assistance of a highly experienced Circuit Court mediator. *Id.*, ¶¶ 21-23. The negotiation process was hard-fought and protracted over months, including several settlement conferences with the Circuit Court mediator and numerous drafts. *Id.*; *see also, Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15-*22 (D. Colo. 2008) (settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in…settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Plaintiff submitted comprehensive mediation statements and preliminary damages studies, which were thoroughly prepared by Class

Counsel and based on years of discovery, documents, data, research, and dozens of interviews. Cottrell Decl., ¶¶ 50-51; *see also, Wilkerson*, 171 F.R.D. at 285 ("The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation.").

Courts in this Circuit have found settlements fairly and honestly negotiated where, as is the case here, "[t]he completeness and intensity of the mediation process, coupled with the quality and reputations of the mediator, demonstrate a commitment by the [p]arties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson,* 171 F.R.D. at 285; *see also Horton v. Molina Healthcare, Inc.,* No. 17-cv-0266-CVE-JFJ, 2019 U.S. Dist. LEXIS 90377, at *2-3 (N.D. Okla. May 22, 2019) (finding a proposed class action settlement agreement fair and reasonable because, inter alia, it was "negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator"); *Ashley,* 2008 U.S. Dist. LEXIS 13069 at *16-17 (settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months); *see also Marcus v. Kan. Dept. of Revenue,* 209 F.Supp.2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

The Parties zealously advocated their respective positions throughout the settlement process. The Settlement is a product of serious, informed, and non-collusive negotiations among experienced counsel and Circuit Court mediator, and warrants final approval of the Settlement.

> **b.    Serious questions of law and fact exist and the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.**

Numerous, serious questions of law and fact exist in this Action, all of which are the subject of considerable risk if this case were to continue to be litigated. Cottrell Decl., ¶¶ 52-57, 61-67. While Plaintiff successfully obtained certification of the California Class, that order was modified

9

to substitute Oklahoma misclassification law for that of California. *Id.*, ¶ 61. While Plaintiff remains confident he would have successfully prosecuted this case even under Oklahoma misclassification law, as JCT pointed out in its appellate briefing, plaintiffs *rarely* succeed in prosecuting misclassification claims under Oklahoma standards. *Id.* If Plaintiff could not show uniform misclassification under Oklahoma law, every wage and hour claim at issue in this case would fail in unison. *Id.*

Of course, this risk assumes the Tenth Circuit would have fully affirmed this Court's Certification Order. *Id.*, ¶ 62. The risk of the Tenth Circuit vacating this Court's Certification Order was, of course, very real. While Plaintiff remains confident his efforts to maintain the certification decision would prevail, it cannot be ignored that the granting of a Rule 23(f) petition is entirely discretionary, and Circuit Courts often grant them when they have concerns over a District Court's certification decision. *Id.* Misclassification class actions are notoriously difficult to certify, and there was a very real risk the Tenth Circuit would reverse this Court's Certification Order. *Id.*

But even assuming Plaintiff successfully defended this Court's certification decision, Plaintiff would still have to prove these claims. *Id.*, ¶ 63. This includes not only the threshold misclassification inquiry, but the California Labor Code claims themselves. *Id.* After all, misclassification, alone, does not violate the law. Plaintiff still would have had to prove off-the-clock work was taking place, and done so on a uniform basis. *Id.* If Plaintiff were to fail in that regard, the risk of decertification on the eve of trial is always a possibility in cases such as these. *Id.* Specifically regarding the PAGA claims, even before Plaintiff successfully prevailed in proving liability as to all of his California Labor Code claims, the Court would strike Plaintiff's PAGA claims for lack of manageability, a requirement now affirmed by one California appellate court ruling, or compel arbitration as to Plaintiff's PAGA claim. *See Wesson v. Staples the Off. Superstore, LLC,* 68 Cal.App.5th 746, 283 Cal. Rptr. 3d 846, 859 (2021), *reh'g denied* (Sept. 27, 2021), *rev'w denied* (Dec. 22, 2021) ("courts have inherent authority to ensure that PAGA claims can be fairly and efficiently tried and, if necessary, may strike a claim that cannot be rendered manageable"); *Viking River Cruises, Inc. v. Moriana,* 142 S. Ct. 1906, 1925 (2022) (reversing trial

court order and finding individual PAGA claims severable and arbitrable under the FAA).

And then there are the risks regarding the Oklahoma claims. Cottrell Decl., ¶ 64. This Court's Certification Order was based on an inference of reliance theory. *See* ECF 213, at pp. 34-35. Plaintiff believes this decision was correct, and remains confident in his ability to defend this decision on appeal. Cottrell Decl.*,* ¶ 64. Nevertheless, if the Tenth Circuit denied an inference of reliance, there is a significant chance the Oklahoma Class would have been decertified. *Id.* And even if the Court's certification decision was upheld, Plaintiff still would have had to prove – from the representations and omissions taking place only at orientation – that this limited pool of evidence was sufficient to demonstrate liability. *Id.*

These are serious questions of law and fact that have been vehemently litigated throughout this litigation. "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC,* No. CIV-07-933-M*,* 2008 U.S. Dist. LEXIS 86741, at *31-41 (W.D. Okla. 2008) (citing *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 2006 U.S. Dist. LEXIS 71039, at *16-18 (D. Colo. 2006)).

Moreover, the complexity, uncertainty, additional expense, and likely duration of further litigation also favor final approval of the Settlement. *See Millsap v. McDonnell Douglas Corp.,* No. 94-CV-633-H(M)*,* 2003 U.S. Dist. LEXIS 26223, at *43 (N.D. Okla. 2003) ("considering the time value of money, [the settlement amount] distributed to class members today has considerably greater value than it would following a trial and subsequent appeal"); *Ashley,* 2008 U.S. Dist. LEXIS 13069, at *15-22.[6] "The class will be well compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely,* 2008 U.S. Dist. LEXIS 86741, at *31-41.

---

[6] *See also, Wilkerson*, 171 F.R.D. at 285 (the value of an immediate recovery, the "monetary worth of the settlement", "is to be weighed not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993))).

This Settlement represents not only a meaningful, immediate recovery for the California and Oklahoma Classes, but also one without any risk or additional expenses of further litigation. Cottrell Decl., ¶¶ 65-67.  This benefit must be considered to the risk that the Classes may recover nothing after appeals, contested trial, and most likely, further appeals, possibly years into the future, or that litigation would deplete funds available to satisfy a judgment. *See id.* These factors thus support final approval of the proposed Settlement.

### c.  The Parties agree that the Settlement is fair and reasonable, further supporting final approval.

"Counsel['s] judgment as to the fairness of the agreement is entitled to considerable weight." *Childs v. Unified Life Ins. Co*., No. 10-CV-23-PJC, 2011 U.S. Dist. LEXIS 138818, at *37 (N.D. Okla. Dec. 2, 2011) (quoting *Lucas,* 234 F.R.D. at 695 and *Marcus,* 209 F.Supp.2d at 1183)). "In addition to considering the judgment of the parties with respect to the proposed settlement, the Court should also 'defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Johnson v. City of Tulsa,* No. 94-CV-39-H(M), 2003 U.S. Dist. LEXIS 26379, at *39 (N.D. Okla. 2003).

Here, Class Counsel and JCT's counsel – law firms with great experience in complex class litigation, particularly in truck driver misclassification cases – have agreed to settle this Action, only after class certification, significant appellate briefing, and months of negotiation under the guidance of a Circuit Court mediator.  Cottrell Decl., ¶¶ 6-7, 49, 67; ECF 281-2, Declaration of Robert Boulter in Support of Plaintiff's Motion for Approval of Class Action Settlement, ¶¶ 3-8. Class Counsel believes that the settlement amount is fair and reasonable in light of their extensive investigation, motion practice, the risks of continued litigation, and their overall experience. Cottrell Decl., ¶ 52.  Plaintiff and Class Counsel further recognize the great expense and length of proceedings necessary to continue this litigation against JCT through the current cross appeals, trial, and any future appeals.  *See id.*, ¶¶ 60, 66-67.

Moreover, in an effort to ensure fairness, the Parties agreed to allocate the settlement proceeds amongst Class Members in a *pro rata* manner that recognizes that amount of time that the particular individual worked as JCT Drivers in the applicable limitations period. *See*

Settlement, ¶¶ VII.2-3; *see also, Lucas v. Kmart Corp.,* Civil Action No. 99-cv-01923-JLK, 2006 U.S. Dist. LEXIS 51439, at *29 (D. Colo. July 27, 2006) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (quoting *In re Am. Bank Note Holographics, Inc., Sec. Litig*., 127 F.Supp.2d 418, 429-30 (S.D.N.Y. 2001)); *Law v. NCAA,* 108 F.Supp.2d 1193 at 1196 (D. Kan. 2000) (noting that the court gives substantial weight to the opinions of experienced counsel regarding the fairness of allocation).  This allocation method, which is based on the number of workweeks, ensures that longer-tenured Drivers receive a greater recovery. Moreover, the allocation tracks the differences in substantive law and penalty claims by weighting the workweek shares more heavily for work performed in California, for JCT Drivers who opted-in to the FLSA portion of this Action, and for JCT Drivers who were subject alleged misrepresentations and omissions during orientation in Oklahoma. *See, e.g., Lucas*, 2006 U.S. Dist. LEXIS 51439 at *29; *Newton v. Fortis Ins. Co*., Civil Action No. 04-cv-1650-PSF-OES, 2006 U.S. Dist. LEXIS 33965, at *4 (D. Colo. 2006) (approving plan of allocation where the allocation was pro rata across the class). This allocation was made based on Class Counsel's careful assessment to ensure that individual Class Members are compensated accordingly and in the most equitable manner. *See* Cottrell Decl., ¶ 58.[7]

The Gross Settlement Amount further represents significant monetary relief to Class Members.  Based on Class Counsel's estimates, the Gross Settlement Amount of $9,250,000 represents a significant portion of the total calculated exposure at trial. *Id.*, ¶ 53. Class Counsel determined a realistic calculated exposure is approximately $105,303,089. *Id.*  Specifically, Class Counsel calculated the wage and hour claims represent approximately $61,888,918 of the calculated exposure, and the Oklahoma economic opportunity claims represent approximately $43,414,170 of the calculated exposure. *Id.*[8]

---

[7] No objections to Class Counsel's plan of allocation were made.  *See, e.g., Maywalt v. Parker & Parsley Petroleum Co.,* 92 Civ. 1152 (RWS), 1997 U.S. Dist. LEXIS 97, at *11-*12 (S.D.N.Y. 1997) (stating that lack of objections to plan of allocation is an important factor in evaluating the plan).

[8] At preliminary approval, the estimated total Class Members was 5,647, which was the total number of Class Members estimated at the Settlement Conference, and the estimated realistic calculated exposure was approximately $84,632,862. ECF 269, at 17; ECF 269-1, ¶ 46.

The Settlement, however, further provides equitable relief to Class Participants who were not under any contract with JCT as of June 2022, as they are released from any known or unknown monetary claims JCT may have against them. Settlement, ¶ X.3. Class Counsel estimates this would include the full amount left on the Equipment Lease, which could be at least $100,000 per Driver; costs and expenses related to sale, re-lease of the equipment; any deficiencies of the principal not covered by such sale or re-lease; and any costs and expenses related to repair and replacement of the equipment. *See, e.g.,* ECF 163-1, Excerpts of Deposition of Shannon Crowley Transcript, 220: 11-14, 233: 24-6; ECF 163-3, Excerpts of Deposition of Darryl Christner, 232: 10-233: 7 (if the Driver terminates the ICOA or the Lease Agreement, JCT can demand the full balance of the lease); ECF 163-7, Three Diamond Leasing, LLC Equipment Lease, ¶¶ 12(g), 13(a), 13(d)-13(f); ECF 163-5, John Christner Trucking, LLC Independent Contractor Operating Agreement, ¶¶ 2(a)-2(b); *see also*, ECF 163-6, Stipulation Regarding the Independent Contractor Agreement; ECF 163-8, Stipulation Regarding the Equipment Lease.

Even excluding these various additional monetary debts and focusing merely on the principal, and even excluding the fact that some Drivers leased multiple trucks, Class Counsel estimates that the value of JCT's release of monetary claims could be worth in excess of $100,000,000. *See* Cottrell Decl., ¶ 54.[9] The Settlement thus represents, in addition to the $9,250,000 monetary relief represented by the Gross Settlement Amount, Class Counsel estimates that there is at least $100,000,000 in equitable relief to Class Participants who were not under any contract with JCT as of June 2022.

To have obtained such a result at trial, Plaintiff would have to prove not only that Class Members were misclassified following a successful cross-appeal, Plaintiff would then have to prove that Oklahoma Class Members are owed the net amount of how much JCT represented they could make, less how much they in fact made, as well as prove that the overall driving opportunity presented to them by JCT was unfair and deceptive. *Id.*, ¶ 55.  Plaintiff would have had to further prove that California Class Members suffered an average of at least 2 California Labor Code

---

[9] JCT vigorously disputed Class Counsel's estimates of the value of the equitable relief and of the substantive claims as well as the underlying assumptions for both. Cottrell Decl., ¶ 54, n. 4.

violations each pay period in violation of the PAGA;[10] that their business expenses occurred during the class period, in the State of California; and that JCT violated derivative claims under California law.[11] *Id.* Plaintiff would further have to, after overcoming JCT's all-but-likely motion to decertify the Collective, prove JCT's liability on the merits of Plaintiff's FLSA claim.[12]

Class Counsel further recognizes there are myriad methods to compute damages for the Oklahoma claims. *Id.*, ¶ 56. All of these would have been the subject of substantial and costly economic expert discovery. *Id.* It is far from certain that the economic measure of damages for this claim that ultimately went to a jury – assuming the Class claims remained certified – would have reflected Plaintiff's "best case scenario." *Id.* Moreover, JCT has argued that any damages award on the Oklahoma claims would be duplicative because, to the extent that any damages awarded for the California claims increased a Driver's revenue or reimbursed the Driver's business expenses, any damages under the Oklahoma claims should be reduced by the same amount. *Id.*

Given the risks, delays, and uncertainty inherent in continued litigation, Plaintiff and Class Counsel believe that the Settlement is fair and reasonable to avoid the cost and uncertainty of continuing litigation. *Id.*, ¶¶ 57, 59-60, 65-67. The Settlement was further endorsed by the Circuit Court mediator. *See id.,* ¶¶ 49-51. Moreover, the reaction to the Settlement from the Class

---

[10] There is also a significant chance that the Court would limit PAGA penalties by declining to stack penalties (*i.e.*, assess multiple penalties for derivative violations for a particular pay period for a particular employee), or simply exercise its discretion to reduce them altogether. *Smith v. Lux Retail N. Am., Inc*., No. C 13-01579 WHA, 2013 U.S. Dist. LEXIS 83562, at *9 (N.D. Cal. June 13, 2013).

[11] On the derivative claims, there are substantial questions as to whether individuals who sporadically worked in California could recover them, and even then, JCT would have argued that no penalties for waiting-time violations can be awarded unless the failure to pay wages is "willful." *See* Cal. Lab. Code § 203; 8 C.C.R. 13520 ("[a] willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages were due."); *Smith v. Rae Venter Law Group*, 29 Cal.4th 345, 354 n.2 (2002) (holding that a good faith dispute that any wages are due will preclude an award of waiting time penalties).

[12] For example, Section 260 of the FLSA reads in relevant part that, in any civil action regarding unpaid compensation, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof." 29 U.S.C. § 260. JCT would no doubt be prepared to submit evidence showing that it had acted in good faith and on reasonable grounds that its actions were not in violation of the FLSA, and whether this Court agrees with JCT would be a risk that Plaintiff would necessarily undertake had litigation continued.

Members has been overwhelmingly positive, strongly supporting the fairness and reasonableness of the Settlement. After all, ***not a single Class Member objected*** to the Settlement, and ***only one (approximately 0.01% of the Class) opted out*** of the Settlement.  *See* Lange Decl., ¶¶ 11-12; *see also, In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d 1249, 1262 (D. Kan. 2006) (reviewing reaction of class members to settlement and overruling any objections before finding the settlement to be fair, adequate and reasonable).

This factor thus supports the Court's final approval of the proposed Settlement. *See Lopez v. Santa Fe,* 206 F.R.D. 285, 292 (D.N.M. 2002) ("[the] trial court is entitled to rely upon the judgment of experienced counsel for the parties . . . Indeed, the trial judge, absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel.").

> ## 2.    Near Identical Definitions of the Proposed Classes Have Already Been Certified, and Should Continue to Be Certified Here for Settlement Purposes.

This Court has already granted class certification as to nearly identical class definitions for the California and Oklahoma Classes and has already determined that these Classes satisfy the prerequisites for Rule 23.  *See* ECF 213 at p. 38; *see also id.* at pp. 5 (numerosity); 6 (adequacy); 18-35 (common issues predominate) 18 (typicality).[13] The Court has confirmed conditional class certification of the California and Oklahoma Classes as defined under the Settlement. ECF 270, ¶ 4. The California and Oklahoma Classes should remain certified for settlement purposes as well.

> ## 3.    The Notice Provisions Were Followed and Provided Adequate Notice to the Class That Satisfies Due Process.

The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry . . . is

---

[13] The proposed Settlement's definitions of the California and Oklahoma Classes are nearly identical to those already certified by the Court. To the extent they differ, aside from typographical differences, under the Settlement, the California Class and Oklahoma Class limits the class period to: between April 13, 2014 and April 12, 2013, respectively, through the date of preliminary approval. *Compare* Settlement, ¶ I.5 *with* ECF 239 (setting class period as July 12, 2017).

reasonableness." *Lucas*, 234 F.R.D. at 693-96 (quoting *Sollenbarger v. Mountain States Tel. and Tel. Co*., 121 F.R.D. 417, 436 (D.N.M. 1988)).

Here, the proposed Notice and manner of distribution negotiated and agreed upon by the parties was "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B). Pursuant to the Court's preliminary approval order, SSI sent the Court-approved Notices of Settlement in accordance with the terms of the Settlement. *See* Lange Decl., ¶¶ 3-15; *see also,* ECF 270, at ¶ 8; Settlement, ¶¶ I.37, III.2, III.4, V.1-2, VI.1. The Settlement Notice fully disclosed Class Members the terms of the Settlement, setting forth, *inter alia,* the amount and breakdown of the Gross Settlement Amount, the nature of the litigation, the definitions of the Classes and relevant claims and issues, the rights of Class Members, directions on how to request exclusion or object to the Settlement, the contact information for SSI and Class Counsel, and the date, time, and place of the final approval hearing. Lange Decl*.,* Ex. A.

SSI followed all of the procedures set forth in the Court-approved notice plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice. *See, supra,* Section II.1. The Notices were sent via U.S. Mail following a U.S. Postal Service's National Change of Address database search. Lange Decl*.,* ¶ 4. Sending individual notices to settlement class members' last-known addresses constitutes the requisite effort. *See, e.g., Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement.").

Ultimately, of the 6,586 notices distributed via U.S. Mail, approximately 446 notices (*i.e.*, 6.7%) were undeliverable following skip-tracing and other techniques. *See* Lange Decl., ¶¶ 5, 8. Moreover, the dissemination of notice via settlement website in addition to U.S. Mail increased the likelihood that Class Members successfully received the notice. *Id*., ¶ 6. The Notices provided reasonable estimates of Class Members' recovery. *See* Lange Decl., ¶¶ 14-15. The Notice thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Newberg on Class Actions at §§ 8.21 and 8.39; Manual for Complex Litigation (Third) at § 21.311 and 21.312. With these measures, the notice

17

process satisfies the "best practicable notice" standard.

**B.    The Court Should Finally Approve the Settlement as to the FLSA Collective.**

The standard for approval of an action arising under the FLSA requires only a determination that the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125-27 (D. Colo. 2016) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). For the reasons discussed above and in Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, the Settlement falls well within the range of approval, as it is a fair and reasonable compromise of a *bona fide* dispute. *See* ECF 269, at 26-28. Pursuant to the Court's preliminary approval order, this Court already granted approval of the Settlement as to the FLSA Collective Members. ECF 270, ¶ 6. The Court should confirm its approval of the Settlement as a fair and reasonable resolution of a *bona fide* dispute.

**C.    The Court Should Finally Approve the Settlement under the PAGA.**

The PAGA provides an enforcement mechanism by enlisting individual plaintiffs as proxies for the state of California to recover civil penalties for violations of California's Labor Code, with a share also going to the individual plaintiffs and other employees. *See Arias v. Superior Court,* 46 Cal.4th 969, 980 (2009). Any settlement of a PAGA action brought by an aggrieved employee must be approved by the Court. Cal. Lab. Code § 2699(1)(2).

Because PAGA is not subject to class certification procedures, the Court must simply review the settlement and approve it if it is "fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." *Moniz v. Adecco USA, Inc.,* 72 Cal.App.5th 56, 77 (2021); *see also, Baumann v. Chase Inv. Servs. Corp*., 747 F.3d 1117, 1124 (9th Cir. 2014) ("A PAGA action is at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class relief."); *Vargas v. Central Freight Lines,* No. 16-cv-00507-JLB, 2017 WL 4271893, *6 (S.D. Cal. Sept. 25, 2017); *Ramirez v. Benito Valley Farms, LLC,* No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272, *6-7 (N.D. Cal. Aug. 25, 2017); *Jordan v. NCI Group,* No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) ("the Court will approve the

PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.").

For the reasons discussed above, the Settlement falls well within the range of approval, as it is fair, reasonable, and adequate.  The Parties have consummated and structured the Settlement. Plaintiff extensively analyzed the facts and claims to evaluate its fairness and reasonableness. Cottrell Decl., ¶¶ 49-67. Class Counsel conducted large amounts of discovery and used this information and data to perform in-depth analyses of the claims and JCT's exposure. *Id.,* ¶¶ 50-51, 53. The PAGA Settlement Amount also advances the PAGA's purpose by serving a warning to JCT and to employers throughout California that failing to ensure strict compliance with the Labor Code will lead to expensive repercussions. This penalty shows JCT and other potential employers that they must have compliant policies that must be strictly enforced. This settlement encourages employers to expend additional resources to ensure that they pay employees for all hours worked and authorize and permit meal and rest breaks and deter other violations of the Labor Code.  In addition, the Settlement will result in a large payment to the LWDA to use for furthering its mission of protecting workers as well as reasonable payments to the Aggrieved Employees, but simply deter such employees from asserting standing to represent any future PAGA claims.

The Settlement achieved here further represents a reasonable result for both the State of California and the Aggrieved Employees. "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer*." O'Connor v. Uber Technologies, Inc.,* 201 F.Supp.3d 1110, 1120-21  (N.D. Cal. 2016) (citing *Cotter v. Lyft, Inc.,* 176 F.Supp.3d 930, 935 (N.D. Cal. 2016)). A court's focus is thus not the amount employees ultimately receive as a result of a settlement, but on whether the settlement achieves PAGA's objectives, even if it represents only a portion of an employer's total exposure. As is the case here, a PAGA settlement that represents only a fraction of the potential recovery is considered reasonable.[14]

---

[14] *See, e.g*., *In Re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) ("'It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'")(citation omitted). Courts in California are generally cautious about PAGA settlements representing less than 1% of the total value of a

The reasoning for this approach is multifaceted; however, one of the major concerns regarding PAGA settlements is that PAGA penalties may be reduced at a court's discretion. "A trial court's discretion to reduce PAGA penalties might be a reason to ultimately discount the value of PAGA claims, perhaps even significantly, in reaching a settlement." *Gonzales v. CoreCivic of Tennessee, LLC,* No. 1:16-cv-01891-DAD-JLT, 2018 U.S. Dist. LEXIS 156549, 2018 WL 4388425, at *6-9 (E.D. Cal. Sept. 13, 2018). The Court could, and likely would, exercise its discretion pursuant to Cal. Lab. Code § 2699(e)(2) to award an amount less that the maximum civil penalty amount based on the facts and circumstances of the case. *See* Cal. Lab. Code § 2699(h) (allowing courts to reduce PAGA awards "based on the facts and circumstances of [the] particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."); *see also, Smith*, 2013 U.S. Dist. LEXIS 83562, at *9 ("For the single mistake of failing to include commissions in the overtime base, plaintiff has asserted five (count them, five) separate labor code violations that could lead to statutory penalties. One is a penalty for failure to pay overtime at the appropriate rate (Cal. Lab. Code §§ 510, 558). Another is for denying employees minimum wage and overtime (Cal. Lab. Code § 1194). But is it plausible that we would really pile one penalty on another for a single substantive wrong?")).

Ultimately, the Settlement advances the PAGA's purpose and is fair and reasonable in light of the challenges and risks presented by continued litigation, and should be approved.

**D.     The Request for Attorneys' Fees, Costs, and an Incentive Award Should Be Approved.**

Concurrently with this Motion, Plaintiff will file his Unopposed Motion for Attorneys' Fees, Costs, and An Incentive Award. ECF 281. No Class Member has submitted an objection to

---

PAGA portion of the settlement, but not regarding PAGA settlements representing 1% or more of the total value of the PAGA portion of the settlement. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp.3d 959, 972-73 (N.D. Cal. 2019) (collecting cases discussing settlements of less than 1% of the total value of a PAGA claim); *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268, at *25 n. 3 (N.D. Cal. May 5, 2021) (noting the PAGA portion of a proposed settlement representing 2.4% of total exposure under the PAGA exceeded the 1% benchmark "and therefore does not invoke the additional concerns examined in *Haralson*"). Here, the PAGA portion of the Settlement – $100,000 – represents over 5% of the total calculated exposure under the PAGA. *See* Cottrell Decl., ¶ 53.

the Settlement, including to the requested fees, costs, and incentive award. In addition to the reasons stated in Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, and An Incentive Award, the lack of objections by Class Members further support: (1) awarding Class Counsel $3,083,025.00 in reasonable attorneys' fees; (2) awarding Class Counsel $72,843.19 in out-of-pocket costs; and (3) awarding Plaintiff Thomas Huddleston an incentive award in the amount of $25,000.00 for his efforts in bringing and prosecuting this proceeding, obtaining critical monetary and equitable relief for thousands of drivers across the country.

### E.    The Court Should Approve the Proposed Implementation Schedule.

The Settlement contains the following proposed schedule, which Plaintiff respectfully requests this Court approve:

| Activity | Deadline |
|---|---|
| Effective Date | The date when all of the following events have occurred: (a) this Stipulation has been executed by all Parties and by Class Counsel and Defense Counsel; (b) the Court has given preliminary approval to the Settlement; (c) notice has been given to the Class Members providing them with an opportunity to opt-out of the Settlement; (d) the Court has held a Final Approval and Fairness Hearing and entered a final order and judgment certifying the Classes and approving this Stipulation; and (e) in the event there are written objections filed prior to the Final Approval and Fairness Hearing that are not later withdrawn, the later of the following events:  when the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or any appeal, writ, or other appellate proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or any appeal, writ, or other appellate proceeding has upheld the Court's final order with no right to pursue further remedies or relief. In this regard, it is the intention of the Parties that the Settlement shall not become effective until the Court's order approving the |

| Activity | Deadline |
|---|---|
| | Settlement is completely final and there is no further recourse by an appellant or objector who seeks to contest the Settlement. In the event that no objections are filed, the Effective Date shall be after steps (a) through (d) have been completed. |
| Deadline for JCT to remit the Gross Settlement Amount to SSI | Within 28 days after Effective Date |
| Deadline for SSI to make payments under the Settlement to Class Participants, Plaintiff for the Service Award, Class Counsel for attorneys' fees and costs, and itself for Administration Costs | Within 35 days of the Effective Date |
| Deadline for SSI to redistribute uncashed check funds to Class Participants | As soon as practicable after the 180-day check-cashing deadline for individual settlement payments after issuance |
| Deadline for SSI to revert uncashed check funds to *cy pres* recipient | As soon as practicable after the 180-day check-cashing deadline for redistributed checks after issuance |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the Settlement, in accordance with the schedule set forth herein.


Dated: October 13, 2022              Respectfully Submitted,


                                     */s/ Carolyn H. Cottrell*
                                     Carolyn H. Cottrell (admitted *pro hac vice*)
                                     David C. Leimbach (admitted *pro hac vice*)
                                     Michelle S. Lim (admitted *pro hac vice*)
                                     SCHNEIDER WALLACE
                                     COTTRELL KONECKY LLP
                                     2000 Powell Street, Suite 1400
                                     Emeryville, California 94608
                                     Telephone: (415) 421-7100
                                     Facsimile:  (415) 421-7105
                                     ccottrell@schneiderwallace.com
                                     dleimbach@schneiderwallace.com
                                     mlim@schneiderwallace.com

                                     Robert S. Boulter (admitted *pro hac vice*)
                                     LAW OFFICES OF ROBERT S. BOULTER

1101 Fifth Avenue, Suite 235
San Rafael, California 94901
Telephone: (415) 233-7100
Facsimile: (415) 233-7101
rsb@boulter-law.com

*Attorneys for Plaintiff, the Classes
and Collective*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the for the United States District Court, Northern District of Oklahoma, by using the Court's Case Management/Electronic Case Filing (CM/ECF) system, on October 13, 2022.

I hereby attest that concurrence in the content of the attached document and authorization to file the attached document has been obtained from the other signatory indicated by a conformed signature (/s/) within the attached e-filed document.


Dated: October 13, 2022                    Respectfully submitted,


                                           */s/ Carolyn H. Cottrell*
                                           Carolyn H. Cottrell (admitted *pro hac vice*)
                                           **SCHNEIDER WALLACE**
                                           **COTTRELL KONECKY LLP**
                                           2000 Powell Street, Suite 1400
                                           Emeryville, California 94608
                                           Telephone: (415) 421-7100
                                           Facsimile: (415) 421-7105
                                           ccottrell@schneiderwallace.com